UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

Civil Action No. 1:05-cv-10324NMG

_____
                                        )
JAY ODUNUKWE, ESQ.                      )
                    Plaintiff,          )
                                        )
        v.                              )
FLEET BANK BOSTON,                      )
                    Defendant.          )
_____)

## AFFIDAVIT OF CAROL E. KAMM

I hereby depose and state on personal knowledge that:

1.      My name is Carol E. Kamm.  I am counsel at the firm of Bulkley,

Richardson and Gelinas, LLP, One Post Office Square, Suite 3700, Boston, MA.  Along

with Donn A. Randall, partner at the firm of Bulkley, Richardson and Gelinas, I represent

the defendant Bank of America, erroneously named Fleet Bank Boston in this action.

2.      Attached as Exhibit 1 to this Affidavit are true and accurate copies of

pages 18, 20, 22, 23, 38, 40–43, 46-48, and 56 of the transcript of the Deposition of Jay

Odunukwe dated August 5, 2004 [Deposition of Jay Odunukwe].  Also attached as

Exhibit 1 to this Affidavit are true and accurate copies of Dep. Ex. 1 and Dep. Ex. 2.

3.      Attached as Exhibit 2 to this Affidavit is a true and accurate copy of the

Affidavit of Marybeth McHardy, which was filed at the request of the investigator from

the Massachusetts Commission Against Discrimination in connection with the plaintiff's

charge of discrimination, MCAD Charge No. 02BPA02452.

4.      Attached as Exhibit 3 to this Affidavit is a true and accurate copy of the

Affidavit of Jean Brennan.

5.      Attached as Exhibit 4 to this Affidavit is a true and accurate copy of the

Affidavit of Pamela Martin.

SIGNED under the penalties of perjury this 21st day of June, 2005.


/s/ Carol E. Kamm
Carol E. Kamm


(301198)

# EXHIBIT 1
# AFFIDAVIT OF CAROL E. KAMM

Volume:   1
Pages:    1-73
Exhibits: 1-3


COMMONWEALTH OF MASSACHUSETTS
COMMISSION AGAINST DISCRIMINATION


DOCKET NO. 02BPA02452

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*x
JAY ODUNUKWE
                    Complainant

        vs.

FLEET BOSTON FINANCIAL
                    Respondent
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*x


          **DEPOSITION OF JAY ODUNUKWE,** a witness

called on behalf of the Respondent, pursuant to

804 CMR 1.13(7), before Camille Macomber, Registered

Professional Reporter and Notary Public within and

for the Commonwealth of Massachusetts, at the Law

Offices of Morgan, Brown & Joy, LLP, One Boston

Place, Boston, Massachusetts, on Thursday, August 5,

2004, commencing at 10:12 a.m.


SHEA COURT REPORTING SERVICES
ONE UNION STREET, SECOND FLOOR
BOSTON, MASSACHUSETTS 02108
(617)227-3097

| | | | |
|---|---|---|---|
| 1 | Q | Have you used that branch before? | 10:25:53 |
| 2 | A | I have gone to that branch before. | 10:25:53 |
| 3 | Q | Was anyone with you that day? | 10:25:53 |
| 4 | A | On what day? | 10:25:54 |
| 5 | Q | The day that -- May 14, 2002. | 10:25:55 |
| 6 | A | No. | 10:25:58 |
| 7 | Q | Were you a Fleet customer? | 10:26:02 |
| 8 | A | On that date? | 10:26:04 |
| 9 | Q | At that time. | 10:26:05 |
| 10 | A | No. | 10:26:06 |
| 11 | Q | Are you currently a Fleet customer or a Bank of | 10:26:06 |
| 12 | | America customer? | 10:26:10 |
| 13 | A | No. | 10:26:11 |
| 14 | Q | At some point prior to that, had you been a | 10:26:11 |
| 15 | | Fleet customer? | 10:26:14 |
| 16 | A | Yes. | 10:26:15 |
| 17 | Q | When were you a Fleet customer prior to that? | 10:26:15 |
| 18 | A | Actually, it was BankBoston. | 10:26:18 |
| 19 | Q | Then they were absorbed by Fleet? | 10:26:23 |
| 20 | A | Yes. | 10:26:28 |
| 21 | Q | After they got absorbed by Fleet, did you remain | 10:26:29 |
| 22 | | a Fleet customer? | 10:26:29 |
| 23 | A | At a point, I did not remain a Fleet customer. | 10:26:31 |
| 24 | Q | Do you remember when it was that you stopped | 10:26:35 |

| | | | |
|---|---|---|---|
| 1 | | Auto, and I had gone to complete payment for the | 10:27:41 |
| 2 | | car.  And Medway Fleet is a close bank to Millis | 10:27:46 |
| 3 | | Used Auto. | 10:27:53 |
| 4 | Q | You said it Millie's, M-i-l-l-i-e-s? | 10:27:55 |
| 5 | A | M-i-l-l-i-s Used Auto. | 10:27:57 |
| 6 | Q | They are in Millis? | 10:28:01 |
| 7 | A | 1465 Main Street, Millis. | 10:28:04 |
| 8 | Q | You said you had been in that bank previously. | 10:28:13 |
| 9 | | For what purposes had you been in that branch | 10:28:15 |
| 10 | | previously? | 10:28:18 |
| 11 | A | I have been in that bank previously when I was a | 10:28:19 |
| 12 | | Fleet customer to use the ATM.  I didn't go | 10:28:23 |
| 13 | | inside the bank, I used the ATM and left | 10:28:28 |
| 14 | | previously. | 10:28:30 |
| 15 | Q | So when you went in to cash a check, that was | 10:28:30 |
| 16 | | the first time you had ever been inside the | 10:28:33 |
| 17 | | branch to conduct business? | 10:28:35 |
| 18 | A | I would think so. | 10:28:36 |
| 19 | Q | Have you been in that branch subsequently to | 10:28:38 |
| 20 | | May 14th of 2002? | 10:28:41 |
| 21 | A | That's what I said, I had been there before | 10:28:42 |
| 22 | | May 14th to use the ATM. | 10:28:44 |
| 23 | Q | How about after? | 10:28:48 |
| 24 | A | Since after May 14th, no. | 10:28:49 |

| | | | |
|---|---|---|---|
| 1 | | significant, we can seek that out. | 10:29:54 |
| 2 | Q | Do you recognize what I have placed in front of | 10:29:56 |
| 3 | | you, Mr. Odunukwe, as Exhibit Number 1? | 10:30:01 |
| 4 | A | Yes. | 10:30:04 |
| 5 | Q | What is that? | 10:30:05 |
| 6 | A | It's a check that I went to the bank on May 14th | 10:30:05 |
| 7 | | to cash. | 10:30:10 |
| 8 | Q | The name on this check or the bearer -- not the | 10:30:11 |
| 9 | | bearer, the name of the drawer on the check is | 10:30:14 |
| 10 | | Joy I. Odunukwe.  Is that your niece who you | 10:30:16 |
| 11 | | referred to previously? | 10:30:21 |
| 12 | A | No, that's my sister. | 10:30:23 |
| 13 | Q | I'm sorry, your sister.  At this time, you were | 10:30:24 |
| 14 | | living at that address as well; is that correct? | 10:30:30 |
| 15 | A | Correct. | 10:30:32 |
| 16 | Q | Was it your intent to withdraw the $1,100 in | 10:30:37 |
| 17 | | cash from the bank that day? | 10:30:41 |
| 18 | A | Correct. | 10:30:43 |
| 19 | Q | It says on the memo line, "From Chinwe," | 10:30:45 |
| 20 | | C-h-i-n-w-e, I believe.  Do you know what that | 10:30:46 |
| 21 | | means? | 10:30:51 |
| 22 | A | That's written by Joy, I don't know what she | 10:30:52 |
| 23 | | meant by that. | 10:30:55 |
| 24 | Q | Do you know anyone named Chinwe? | 10:30:56 |

|   |   |   |   |
|---|---|---|---|
| 1 | A | There are several people that I know with that | 10:30:59 |
| 2 |   | people.  That's like a first name, so I don't | 10:31:01 |
| 3 |   | know. | 10:31:05 |
| 4 |   | MR. BERGER:  What does this have to do | 10:31:06 |
| 5 |   | with the case?  Objection. | 10:31:07 |
| 6 |   | MR. McCONNELL:  Mr. Berger, we can get | 10:31:10 |
| 7 |   | through this more quickly if you don't keep | 10:31:12 |
| 8 |   | objecting. | 10:31:14 |
| 9 |   | MR. BERGER:  You started it with your | 10:31:14 |
| 10 |   | absurd letter when the man was at an AIDS | 10:31:15 |
| 11 |   | conference, which we're also going to put on the | 10:31:18 |
| 12 |   | record.  So you set the tempo, you set the tone, | 10:31:18 |
| 13 |   | it's your problem. | 10:31:22 |
| 14 | Q | Do you recognize the signature on this check, | 10:31:35 |
| 15 |   | sir, to be your sister's signature? | 10:31:36 |
| 16 | A | Correct. | 10:31:42 |
| 17 | Q | Was there a line at the bank when you went in? | 10:32:09 |
| 18 | A | Yes. | 10:32:12 |
| 19 | Q | Approximately how long did you wait from when | 10:32:12 |
| 20 |   | you came in and got on line or did you proceed | 10:32:15 |
| 21 |   | to the tellers? | 10:32:17 |
| 22 | A | No, I did not, there was a line. | 10:32:18 |
| 23 | Q | How long did you wait in line for before you got | 10:32:22 |
| 24 |   | to a teller? | 10:32:25 |

| | | | |
|---|---|---|---|
| 1 | | that day? | 10:48:03 |
| 2 | A | When she told me I have to leave or I will be | 10:48:08 |
| 3 | | evicted, I told her, "I'm not going anywhere." | 10:48:12 |
| 4 | | They were looking at each other, and then she | 10:48:14 |
| 5 | | told me to move to the next vacant teller | 10:48:17 |
| 6 | | window, she will complete what she was doing and | 10:48:24 |
| 7 | | come and talk to me. | 10:48:29 |
| 8 | Q | Did you move over to the next teller window? | 10:48:31 |
| 9 | A | I did. | 10:48:33 |
| 10 | Q | Did the manager come and talk to you? | 10:48:34 |
| 11 | A | Eventually she came, and still behind the | 10:48:38 |
| 12 | | counter, asked me to come into her office. | 10:48:41 |
| 13 | Q | So she didn't talk to you through that next | 10:48:43 |
| 14 | | teller window, she just instructed you to go | 10:48:46 |
| 15 | | around to her office? | 10:48:50 |
| 16 | A | Yes. | 10:48:51 |
| 17 | Q | Did you go with her to her office? | 10:48:51 |
| 18 | A | When she asked me to go, I went with her to her | 10:48:51 |
| 19 | | office. | 10:48:55 |
| 20 | Q | At some point while you were still with the | 10:48:58 |
| 21 | | teller and the manager, did you say to them or | 10:48:59 |
| 22 | | refer to them as "women" or "you women" or | 10:49:01 |
| 23 | | anything to that effect? | 10:49:04 |
| 24 | A | Absolutely not, no. | 10:49:06 |

| | | | |
|---|---|---|---|
| 1 | Q | Do you recall if the door was open or closed? | 10:50:11 |
| 2 | A | I don't recall.  It may have been open. | 10:50:14 |
| 3 | Q | But you don't remember? | 10:50:19 |
| 4 | A | No. | 10:50:20 |
| 5 | Q | What, if anything, did the manager say to you at | 10:50:22 |
| 6 | | that point? | 10:50:24 |
| 7 | A | You mean inside her office? | 10:50:28 |
| 8 | Q | Yes. | 10:50:29 |
| 9 | A | She asked me to sit down, I sat down, and she | 10:50:32 |
| 10 | | sat down, picked up the phone, I think she | 10:50:35 |
| 11 | | called somebody or whatever.  I don't recall if | 10:50:39 |
| 12 | | she said anything, hung up the phone.  She still | 10:50:44 |
| 13 | | had my checks and the IDs, pushed back the check | 10:50:48 |
| 14 | | and IDs to me, and asked me to leave, they | 10:50:50 |
| 15 | | weren't going to cash my check.  If I don't | 10:50:54 |
| 16 | | leave, I will be forcibly removed. | 10:50:57 |
| 17 | Q | Did she say anything else? | 10:51:09 |
| 18 | A | That's what I recall she told me. | 10:51:09 |
| 19 | Q | Did you say anything else? | 10:51:09 |
| 20 | A | Yes. | 10:51:09 |
| 21 | Q | What did you say? | 10:51:09 |
| 22 | A | I told her, "Why are you not cashing my check? | 10:51:10 |
| 23 | | I have the IDS, I have valid identification, | 10:51:14 |
| 24 | | what you're doing here is illegal." | 10:51:19 |

| | | |
|---|---|---|
| 1 | Q | What, if anything, did she say? | 10:51:23 |
| 2 | A | She basically repeated the sentence, "You have | 10:51:26 |
| 3 | | to leave the bank or I will forcibly remove | 10:51:30 |
| 4 | | you." | 10:51:37 |
| 5 | Q | What did you mean by, "What you're doing here is | 10:51:37 |
| 6 | | illegal"? | 10:51:41 |
| 7 | | MR. BERGER:  Objection.  He said, it's | 10:51:42 |
| 8 | | not a question of what he means.  That's | 10:51:42 |
| 9 | | improper.  There are other ways to ask that | 10:51:47 |
| 10 | | question, I suppose. | 10:51:50 |
| 11 | Q | You can answer it, if you can. | 10:51:54 |
| 12 | A | Can you repeat the question? | 10:51:56 |
| 13 | Q | What did you mean by, "What is happening here is | 10:51:58 |
| 14 | | illegal"? | 10:52:01 |
| 15 | A | Them refusing to cash my check when I have | 10:52:01 |
| 16 | | proper valid identifications. | 10:52:08 |
| 17 | Q | Do you know whether she attempted to contact the | 10:52:12 |
| 18 | | drawer of the check to determine whether or not | 10:52:15 |
| 19 | | it was valid? | 10:52:19 |
| 20 | A | I don't know. | 10:52:21 |
| 21 | Q | And you say you can't recall if she said | 10:52:23 |
| 22 | | anything on the telephone when she dialed the | 10:52:27 |
| 23 | | number? | 10:52:29 |
| 24 | A | No, it was very brief.  No. | 10:52:30 |

| | | | |
|---|---|---|---|
| 1 | Q | Did she apologize to you for any inconvenience? | 10:52:33 |
| 2 | A | No. | 10:52:36 |
| 3 | Q | Did she ever make any type of apology that day | 10:52:37 |
| 4 | | to you? | 10:52:41 |
| 5 | A | No. | 10:52:41 |
| 6 | Q | Do you recall her saying anything else, except | 10:52:42 |
| 7 | | what you have testified to so far? | 10:52:46 |
| 8 | A | Basically that I have to leave or they will | 10:52:50 |
| 9 | | forcibly remove me from the bank. | 10:52:53 |
| 10 | Q | So she said that again inside her office? | 10:52:56 |
| 11 | A | She said it more than once. | 10:53:00 |
| 12 | Q | In her office? | 10:53:02 |
| 13 | A | In her office. | 10:53:03 |
| 14 | Q | What did you do then, if anything? | 10:53:05 |
| 15 | A | The only thing I told her was basically, as I | 10:53:07 |
| 16 | | said before, "You have succeeded in refusing to | 10:53:10 |
| 17 | | cash my check when I have proper valid | 10:53:18 |
| 18 | | identification. What you have done is not | 10:53:22 |
| 19 | | right, it's illegal." And finally what I said | 10:53:23 |
| 20 | | afterwards, "I will call Fleet Customer Service | 10:53:26 |
| 21 | | and report this." Then I stood up and left. | 10:53:28 |
| 22 | Q | Did she say anything in response to you? | 10:53:32 |
| 23 | A | If she said, I can't recall anything she said. | 10:53:37 |
| 24 | Q | Approximately how long were you in her office | 10:53:42 |

| | | | |
|---|---|---|---|
| 1 | | for? | 10:53:44 |
| 2 | A | I would estimate not more than three minutes, | 10:53:45 |
| 3 | | maybe four minutes. | 10:53:51 |
| 4 | Q | And approximately how long was your interaction | 10:53:54 |
| 5 | | with the teller at the teller window? | 10:53:55 |
| 6 | A | I would estimate maybe five minutes perhaps. | 10:54:02 |
| 7 | Q | Was there a police officer at the branch when | 10:54:09 |
| 8 | | you were there that day? | 10:54:12 |
| 9 | A | We actually walked in almost at the same time. | 10:54:14 |
| 10 | | I drove to the parking lot, he drove into the | 10:54:20 |
| 11 | | parking lot, he walked in in front of me, I | 10:54:24 |
| 12 | | walked behind him.  I was standing behind him in | 10:54:28 |
| 13 | | line. | 10:54:33 |
| 14 | Q | Did you have any interactions with the police | 10:54:37 |
| 15 | | officer that day? | 10:54:39 |
| 16 | A | No. | 10:54:40 |
| 17 | Q | Did he say anything to you? | 10:54:41 |
| 18 | A | No. | 10:54:43 |
| 19 | Q | Did you see the police officer have any | 10:54:44 |
| 20 | | interactions with the teller? | 10:54:47 |
| 21 | A | He was in front of me, he went to the teller on | 10:54:50 |
| 22 | | the left, then I went to the teller on the | 10:54:53 |
| 23 | | right. | 10:54:56 |
| 24 | Q | So he was standing at the teller adjacent to | 10:54:58 |

| | | | |
|---|---|---|---|
| 1 | | it's the deposit ticket. | 11:00:49 |
| 2 | Q | On the second page, can you identify the name | 11:00:52 |
| 3 | | that's written on the top? | 11:00:57 |
| 4 | A | I think that's the name of the person on the | 11:01:03 |
| 5 | | check that says void. | 11:01:10 |
| 6 | Q | Can you read that name? | 11:01:14 |
| 7 | A | It's a signature that I cannot read. | 11:01:17 |
| 8 | Q | Do you know who that is? | 11:01:19 |
| 9 | A | Yes, I do. | 11:01:21 |
| 10 | Q | Who is that? | 11:01:21 |
| 11 | A | That's Joy's -- that's my other sister. | 11:01:22 |
| 12 | Q | The signature at the bottom? | 11:01:29 |
| 13 | A | That's Joy, the person that wrote the check to | 11:01:30 |
| 14 | | me. | 11:01:32 |
| 15 | Q | The signature at the top, can you identify that | 11:01:33 |
| 16 | | of the second page? | 11:01:36 |
| 17 | A | That's the owner of the check that's being | 11:01:37 |
| 18 | | deposited.  That's Joy's sister. | 11:01:41 |
| 19 | Q | Joy's sister? | 11:01:48 |
| 20 | A | Correct.  Who is my other sister, who is | 11:01:49 |
| 21 | | married, that's why the name is different. | 11:01:53 |
| 22 | Q | That's another sister of yours? | 11:01:56 |
| 23 | A | Correct. | 11:02:00 |
| 24 | Q | That's Chinwe E-n-e-m-o-u-k-w-u? | 11:02:00 |

| | | | |
|---|---|---|---|
| 1 | A | The spelling is not clear here, but that's her. | 11:02:10 |
| 2 | Q | That's your other sister? | 11:02:14 |
| 3 | A | Correct. | 11:02:16 |
| 4 | Q | She lives in Florida? | 11:02:17 |
| 5 | A | Correct. | 11:02:19 |
| 6 | Q | So you were depositing this check on behalf of | 11:02:21 |
| 7 | | your sister into her account; is that correct? | 11:02:24 |
| 8 | A | On behalf of Joy, correct. | 11:02:29 |
| 9 | Q | Is it your recollection that it's this check and | 11:02:44 |
| 10 | | this deposit slip was the check that you | 11:02:47 |
| 11 | | deposited at the Medway branch? | 11:02:51 |
| 12 | A | Medfield branch. | 11:02:55 |
| 13 | Q | Medfield, rather. | 11:02:56 |
| 14 | A | Yes, that was the check I deposited, yes. | 11:02:56 |
| 15 | Q | Had you attempted to deposit this check at the | 11:03:04 |
| 16 | | Medway branch? | 11:03:07 |
| 17 | A | No. | 11:03:08 |
| 18 | Q | Why not? | 11:03:09 |
| 19 | A | Because there were two separate transactions. | 11:03:11 |
| 20 | | First was to cash the check, and then the second | 11:03:14 |
| 21 | | transaction was to make the deposit, which is | 11:03:17 |
| 22 | | exactly what I did in Medfield.  But since I | 11:03:20 |
| 23 | | couldn't cash my check in Medway, we didn't get | 11:03:24 |
| 24 | | to the second part, which is to deposit the | 11:03:28 |

| | | |
|---|---|---|
| 1 | | check. | 11:03:31 |
| 2 | Q | So you were just holding this deposit to be a | 11:03:31 |
| 3 | | second transaction in Medway? | 11:03:34 |
| 4 | | MR. BERGER:  Objection. | 11:03:36 |
| 5 | A | Correct. | 11:03:36 |
| 6 | Q | Did you ever say to anyone in Medway, "Hey, I'm | 11:03:39 |
| 7 | | depositing a check that would more than cover | 11:03:42 |
| 8 | | the money that I'm withdrawing from this | 11:03:46 |
| 9 | | account"? | 11:03:48 |
| 10 | A | No, never came up, it wasn't an issue. | 11:03:49 |
| 11 | Q | Did you ever tell the branch manager or the | 11:03:52 |
| 12 | | teller at Medway that it was your sister's | 11:03:55 |
| 13 | | account that you were drawing it on and that you | 11:03:58 |
| 14 | | could contact her? | 11:04:01 |
| 15 | A | The issue was my IDs not being valid, not that | 11:04:03 |
| 16 | | the check was fraudulent or whatever.  The issue | 11:04:07 |
| 17 | | was never who gave me the check. | 11:04:12 |
| 18 | Q | Do you understand that there's a reason why | 11:04:15 |
| 19 | | banks check identification, though, in order to | 11:04:17 |
| 20 | | determine whether or not the bearer of a check | 11:04:21 |
| 21 | | is the person for whom it's drawn -- | 11:04:23 |
| 22 | | MR. BERGER:  Don't even answer that. | 11:04:27 |
| 23 | | We can get an order on that.  We're not here to | 11:04:27 |
| 24 | | debate the case. | 11:04:30 |

| | | |
|---|---|---|
| 1 | | but I didn't go anywhere else. | 11:13:30 |
| 2 | Q | Now, did the teller mention your race to you at | 11:13:30 |
| 3 | | any time? | 11:13:32 |
| 4 | A | She did not. | 11:13:33 |
| 5 | Q | Did she make any derogatory comments towards | 11:13:34 |
| 6 | | you? | 11:13:38 |
| 7 | A | She did not. | 11:13:39 |
| 8 | Q | Did the manager mention your race to you at any | 11:13:39 |
| 9 | | time? | 11:13:42 |
| 10 | A | She did not. | 11:13:42 |
| 11 | Q | Did the manager make any derogatory comments | 11:13:43 |
| 12 | | towards you? | 11:13:47 |
| 13 | A | She did not. | 11:13:48 |
| 14 | Q | What leads you to conclude that it was because | 11:13:49 |
| 15 | | of your race that this happened to you, besides | 11:13:52 |
| 16 | | the fact that you were the only black customer | 11:13:56 |
| 17 | | in the branch that day? | 11:14:02 |
| 18 | A | The totality of the whole picture.  I gave the | 11:14:03 |
| 19 | | teller what was clearly proper identification. | 11:14:07 |
| 20 | | She saw it, she tells me, "I will not serve | 11:14:11 |
| 21 | | you."  She raised her voice, people were looking | 11:14:15 |
| 22 | | at us.  People were looking at us.  This is a | 11:14:19 |
| 23 | | wide open lobby.  People were looking at us. | 11:14:22 |
| 24 | | She raised her voice, that was so clear to me | 11:14:25 |

NASS DL So5741424/03-17-05

JOY I. ODUNUKWE
9 FIELDMONT ST.
HYDE PARK, MA  02138

5-13/110
0033144085

1971

DATE 5/14/02

PAY TO THE
ORDER OF Udoka "Joy Odunukwe      $ 1100.00

One Thousand one hundred —————— DOLLARS

⌀ Fleet
First Community Bank
www.fleet.com
Fleet - Boston Massachusetts
81343

MEMO Jssy Chiurma

⑈:011000138⑈: 0038 44065⑈ 1971



Odunukwe
DEPOSITION
EXHIBIT
8.3.04 in



Odunukwe
DEPOSITION
EXHIBIT
2
PENGAD 800-631-6989



# EXHIBIT 2
# AFFIDAVIT OF CAROL E. KAMM



**Fleet**

*FleetBoston Financial*

Anne M. Kinnane
Senior Counsel
Corporate Law Department

Mail Stop: MA DE 10019B
100 Federal Street
Boston, MA 02110
617 434.0879 tel
617 434.7980 fax
anne_m_kinnane@fleet.com

November 8, 2002

**VIA FACSIMILE (617) 994-6024**
**AND U.S. MAIL**

Marzella Hightower
Investigator
Massachusetts Commission Against Discrimination
One Ashburton Place
Boston, Massachusetts  02108

      Re:    Jay Odunukwe v. Fleet Bank
              MCAD Charge No.:  02BPA02452

Dear Ms. Hightower:

At the October 31, 2002 investigative conference in the above-referenced matter, you requested that Respondent provide the Commission with a statement from MaryBeth McHardy, the Medway branch teller who -- for legitimate business reasons -- refused to cash Mr. Odunukwe's check.  Marybeth McHardy's affidavit is attached.

Please do not hesitate to contact me in the event you have any further questions.

Very truly yours,

Anne M. Kinnane

## COMMONWEALTH OF MASSACHUSETTS
## COMMISSION AGAINST DISCRIMINATION

JAY ODUNUKWE,                    )
                                 )
            Complainant,         )
                                 )
v.                               )        Docket No. 02BPA02452
                                 )
FLEET BANK                       )
                                 )
            Respondent.          )

### AFFIDAVIT OF MARYBETH MCHARDY

I, Marybeth McHardy, hereby depose and state that the following statement is true and correct to the best of my knowledge, information and belief:

In May 2002 I worked as a Teller at Fleet's Medway branch. I recall the day that Mr. Odunukwe came to the branch to cash a check.

I waited on Mr. Odunukwe who presented a check for more than $500 for cashing. Because he was not a Fleet customer, I requested two forms of identification from him. I recall that he produced a driver's license and a student identification. Under Fleet's policy, his driver's license was an acceptable form of identification, but the student identification was not.

I explained to him that I could not cash his check without two forms of acceptable identification. He searched his wallet for other identification but was unable to provide a second acceptable identification. He never produced an American Express Card. Had he done do, there is no question that I would have processed the transaction and cashed his check.

When I explained that I could not cash his check, Mr. Odunukwe became extremely irate. He called me a "bitch" and accused me of being racist. I was stunned by his behavior and attempted to calm him down. I know that a Medway police officer, who happened to be in the branch that day, observed the interaction and remained in the branch until Mr. Odunukwe left.

I sought my branch manager's assistance to deal with Mr. Odunukwe. When the branch manager, Jean Brennan, approached us, Mr. Odunukwe said that he did not want to deal with "women" and that he wanted to see the "man." Ms. Brennan took Mr. Odunukwe to her office. I had no further dealings with Mr. Odunukwe.

Later that day, Mr. Odunukwe called Ms. Brennan and informed her that he had cashed the check at Fleet's Medfield branch. We contacted the Medfield branch and learned that the Teller who had handled Mr. Odunukwe's transaction was an inexperienced Teller just out of Fleet's Teller training program and had cashed Mr. Odunukwe's check without obtaining two forms of proper identification.

I cannot express more firmly that I did *not* discriminate against Mr. Odunukwe. I applied Fleet's check cashing policy in this situation without regard to Mr. Odunukwe's race.

Signed under the pains and penalties of perjury.

Marybeth McHardy

# EXHIBIT 3
# AFFIDAVIT OF CAROL E. KAMM

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

Civil Action No. 1:05-cv-10324NMG

|  |  |
|---|---|
| JAY ODUNUKWE, ESQ.<br>                    Plaintiff, | )<br>)<br>)<br>) |
| v. | ) |
| FLEET BANK BOSTON,<br>                    Defendant. | )<br>)<br>) |

## **AFFIDAVIT OF JEAN BRENNAN**

I hereby depose and state on personal knowledge that:

      1.     My name is Jean Brennan. I am the branch manager for the Bank of America branch located in Medway, MA. I was the branch manager for this branch in May 2002 when it was a branch of Fleet National Bank. I have been involved in the banking industry for 25 years.

      2.     On May 14, 2002, I was working at a teller window because of the absence of several tellers. I heard a customer speaking loudly to Mary Beth McHardy, who was one of the tellers working in the branch in May 2002. I did not hear Ms.McHardy raise her voice to him. At some point, Ms. McHardy called me over and asked me if I could take care of the customer. I believe this customer was the plaintiff in this case, Jay Odunukwe.

      3.     Mr. Odunukwe asked me where the "man" was that he needed to speak to. I told him I was the manager. Mr. Odunukwe was being quite disruptive, so I went outside the teller line and asked him if he could step in to my office so that I could assist him. He agreed. He showed me a valid Massachusetts drivers license, an expired student identification card, and a check for $1100 drawn on the account of Fleet Bank customer Joy Odunukwe. Mr. Odunukwe never showed me an American Express card. If he had, there is no question that I would have processed his transaction. I explained to him that, as a non-Fleet customer, he needed two valid forms of identification in order to cash his check, and that his expired student ID was not a valid form of identification. I told him I would call the maker of the check and, if she verified that she had given him the check, that I would cash it with just the Massachusetts license. I called Joy Odunukwe, the maker of the check, at work but she was not working that day. I also called Ms. Odunukwe's home number and there was no answer.

4.    After attempting to make the calls, I told him I was sorry but that I was unable to cash the check. Mr. Odunukwe continued to be quite upset and repeatedly stated that he knew why I was refusing to cash his check. At some point he appeared to understand that I would not cash the check, and he left. At no time did I tell him he must leave the bank, nor did I tell him that he would be forcibly removed if he did not leave the bank. Mr. Odunukwe did not tell me that he was humiliated or disgraced in front of alot of people for no reason, or that he was the only black customer, that he had been discriminated against, or that he was going to file a complaint with Fleet management.

5.    Fleet's check cashing identification policy in effect in May 2002 required a non-Fleet customer cashing a check over $500 to show two forms of approved identification, one of which must have a photo. A true and accurate copy of the policy in effect in May 2002 is attached to this affidavit as Exhibit A. Approved forms of identification are listed in the policy and did not include student identification. In addition, expired forms of identification were not accepted. The policy also provides that when a credit card is being used as a form of identification, the credit card type and expiration date must be recorded on the check, and the credit card number must be written on the journal tape. The journal tape records the transactions that are processed at each teller work station.

6.    Later that same day, Mr. Odunukwe called me back and informed me that he had been able to cash the check at a Fleet branch in Medfield. He told me that I had not seen the end of this and that he felt he had been discriminated against. I told him that that was not the reason that we did not cash his check and that I was sorry he felt that way.

7.    I then called the Medfield branch and asked them why the check had been cashed without proper identification. I was told that he had made a deposit to Ms. Odunukwe's account as part of his transaction.

8.    At some point I obtained a copy of the check, the deposit, and the journal tape from Mr. Odunukwe's transactions at the Medfield branch. The copy of the check does not list a credit card type or expiration date, which was required to be put on the check if a credit card was used for identification. Further, the credit card number is not noted on the journal tape, which was required by the policy if a credit card was used for identification. The deposit Mr. Odunukwe made was for $1,333, which was more than the amount of the check he had attempted to cash. Mr. Odunukwe did not attempt to make a deposit when he came to the Medway branch on May 14, 2002.

Signed under the penalties of perjury this _20_ day of June, 2005.

Jean Brennan

2

# EXHIBIT A

After reviewing the transaction and confirming that all standard policy and procedure requirements have been met, the approver must initial the check in the top, right hand corner, then return it to the employee who presented it for completion of the transaction.

*CONFIDENTIAL*

**Check Cashing Identification Policy**

Identification requirements for check cashing are as follows:

| Presented By: | Check Amount: | ID Required: |
|---|---|---|
| Fleet Customer | Any amount | Fleet ATM, Total Access Check Card or Select Card PIN swipe. |
| | $1,000 or less | One form of acceptable photo ID. |
| | Greater than $1,000 | Two forms of acceptable ID, one of which must have a photo. |
| "Known Customer" (Fleet Customer or non-account holder) | Any amount | None. <br><br> A "Known" Fleet Customer is defined as being known to an approving individual by sight and by account relationship. <br><br> A "Known" non-account holder is otherwise well known personally and is cashing a Fleet check or an approved off-us check (i.e., from the check cashing table). |
| Non-Customer | $500 or less | One form of acceptable photo ID. |
| | Greater than $500 | Two forms of acceptable ID, one of which must have a photo. |



**Notes:**

- Special identification policies which apply to Welfare Checks and Travelers Checks are given in the appropriate sections for these items.
- Off-Us check cashing is subject to restrictions which are defined in the Off-Us Check Cashing section.
- When "Known Customer" is utilized:
  - There must always be reasonable knowledge of how to locate the individual.
  - If the transacting teller is the approver, no documentation of ID or teller initials are required.
  - If a branch representative other than the transacting teller is the approver, the approving (and now accountable) branch representative must initial the check on the front where the identification would normally be recorded.

Before cashing any check, employees must:

- Ask for identification in accordance with policy,
- Examine the identification to ensure its authenticity (e.g., Are there erasures, alterations? Has the card expired?),
- Compare the identification to the presenter (e.g., Is the birth date reasonable? Does the person resemble the picture?), and
- Record the type of identification, corresponding numbers (see note below), and expiration date on the front, top portion of the check.

**Note:** When accepting a credit card for identification, **do not** record the credit card number on the check. Refer to the following "Recording Credit Cards Used as Identification" for state-specific policies on recording credit card information.



**Recording Credit Cards Used as Identification**

The Bank must ensure that credit card information recorded for identification purposes is secure and that it is not accessible to persons outside the Bank. When recording credit cards used as identification, the policy for each state is detailed in the table below.



| State | Policy |
|-------|--------|
| CT, MA, ME, NY, RI | • Record on the check the credit card **type** and **expiration date.**<br>• If cashing an on-us check, write the **credit card number** on the Flextran journal tape before the transaction.<br>• If cashing an off-us check, enter the **credit card number** in the MISC field on the Off-Us Check Cashing screen.<br>• Do not record the credit card number on the check. |
| FL, NH | • Record on the check the credit card **type.**<br>• If cashing an on-us check, write the **first 6 digits\*** of the credit card number on the Flextran journal tape before the transaction.<br>• If cashing an off-us check, enter the **first 6 digits\*** of the credit card number in the MISC field on the Off-Us Check Cashing screen.<br>• Do not record the credit card number or the expiration date on the check.<br>• Do not record more than the first 6 digits of the card number on the Flextran journal tape.<br><br>**\* Note:** The first 6 digits of the card number identifies the issuing bank. |

**Check Cashing Approved Forms of Identification**

The following are approved forms of identification:



- Fleet ATM Card or Fleet Total Access Check/Select Cash & Check Card with PIN swipe (preferred method)
- "Known Customer" (**Note:** Authorization to use "Known Customer" must be assigned by the Branch Manager)
- Driver's License with photo (Original, not duplicate)\*
  \*Includes U.S. Territories as listed in the *I.D. Checking Guide* (for example, Puerto Rico); consult the Guide for description.
- New Jersey Non-Photo Driver's License (Original, not duplicate)
- New York State Learner's Permit with photo
- Non-Driver's ID Card (State Issued)
- State, County, or City issued Senior Citizen ID Card with photo
- Military ID Card with photo
- U.S. or Foreign Passport with photo
- Mexican Consular ID Card with photo
- Immigration & Naturalization Service issued Alien Registration Card with photo (Includes Resident Alien card and Employment Authorization IDs)
- State, County, or City issued Welfare/Public Assistance Card with photo
- EBT Card (Electronic Benefits Transfer) with photo
- Native American ID with photo
- Major Credit Card (i.e., MasterCard, Visa, American Express, Novus)
- New Jersey Casino and CT Casino Commission IDs

**Note:** Metro New York branches may accept a non-photo NJ driver's license as a required form of photo ID.

# EXHIBIT 4
# AFFIDAVIT OF CAROL E. KAMM

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

Civil Action No. 1:05-cv-10324NMG

|  |  |
|---|---|
| JAY ODUNUKWE, ESQ.<br>Plaintiff,<br><br>v.<br>FLEET BANK BOSTON,<br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## AFFIDAVIT OF PAMELA MARTIN

I hereby depose and state on personal knowledge that:

1.      My name is Pamela Martin. I am the assistant branch manager for the Bank of America branch located in Medfield, Massachusetts. I was the branch operations manager for this same branch in May 2002 when it was a branch of Fleet National Bank ("Fleet").

2.      On May 14, 2002, I authorized a teller in the Medfield branch to cash a check for a non-Fleet customer who did not have sufficient identification for the transaction. The customer showed me a Massachusetts drivers license and another form of identification. I do not recall specifically what that second form of identification was, but it was not an approved form of identification. The customer was also making a deposit to the account of the maker of the check he was cashing, and I believe this was the reason I authorized the transaction. I believe the non-Fleet customer in these transactions was the plaintiff in this case, Jay Odunukwe.

3.      Attached to this Affidavit as Exhibit A are copies of the check that Mr. Odunukwe cashed on May 14, 2002, the deposit slip and check he deposited on May 14, 2002, and the journal tape of these two transactions. The check Mr. Odunukwe cashed was for $1,100, from the Fleet account of Joy Odunukwe. The journal tape shows that he cashed this check at 12:18 p.m. on May 14, 2002, and that he made a deposit to Ms. Odunukwe's account in the amount of $1,333 at 12:20 p.m., two minutes later.

4.      Fleet's check cashing identification policy required the teller to record the credit card type and expiration date on the check when a credit card was being used as a form of identification, and to write the credit card number on the journal tape of the transaction. A copy of the check cashing identification policy in effect in May 2002 is attached as Exhibit B to this Affidavit. The documents in Exhibit A show that there is no

1

credit card type and expiration date recorded on the check Mr. Odunukwe cashed, and no credit card number is written on the journal tape.

5.    I spoke with someone from the Medway Fleet branch on May 14, 2002, the same day that these transactions took place. The person told me that they had not cashed Mr. Odunukwe's check because he did not have sufficient identification. I told the person that he had cashed the check in our branch, and that I had made an exception because he had also made a deposit.

Signed under the penalties of perjury this _18th_ day of June, 2005.

_Pamela A Martin_

Pamela Martin

2

# EXHIBIT A

NA88 DL S 0 5 7 4 1 4 2 4 / 03-19-03

**JOY I. ODUNUKWE**
9 FIELDMONT ST.
HYDE PARK, MA 02136

5-13/110
0038144065

1971

DATE 5/14/02

PAY TO THE ORDER OF __Udoka  Jay  Odunukwe__ $ 1100.00

__One Thousand one hundred ————__ DOLLARS

**Fleet**
First Community Bank
www.fleet.com
Fleet - Boston Massachusetts

8136

MEMO _from chisom_

⑆011000138⑆ 00381 44065⑆ 1971

Accepted — ONLINE 12:15
37.12+
6,666.83+
810.05+
7519.00 TOTL

Please insert Micr document
0074 05/14/02 TLR-41960    _WS-0106_.
ON-US CASHED CHECK
CHECK PRESENTER                    N
ON-US CSH CHK AMT        $1,100.00
CASH OUT                 $1,100.00
SUPERVISOR: 23212
ACCOUNT NBR             0038144065
CHK SERIAL NBR                1971
BK CROSSOVER                   .9
JOY I ODUNUKWE
ACCT OFF/BRANCH: 81345      81345

Use Bin # 2
0074 TUE 05/14/02 12:18    0038144065
CASH OUT      $1,100.00     NM
ON-US CASHED CHECK        $1,100.00
41960 B2 156 84640 MEDFIELD BRANCH

Accepted — ONLINE 12:18
1,100.00+
1,100.00-
.00  TOTL
0079 05/14/02 TLR-41960    _WS-0106_.
DDA DEPOSIT
ACCOUNT NBR             0038144065
DDA DEPOSIT AMT          $1,333.00
ODUNUKWE J

ONL:  $5,168.02   AVL:   $3,835.02
Use Bin # 3
0079 TUE 05/14/02 12:20    0038144065

CHECKING DEP              $1,333.00
41960 B2 156 84640 MEDFIELD BRANCH
ONL:   $5,168.02   AVL:   $3,835.02

# REDACT





# EXHIBIT B

After reviewing the transaction and confirming that all standard policy and procedure requirements have been met, the approver must initial the check in the top, right hand corner, then return it to the employee who presented it for completion of the transaction.

**CONFIDENTIAL**

**Check Cashing Identification Policy**

Identification requirements for check cashing are as follows:

| Presented By: | Check Amount: | ID Required: |
|---|---|---|
| Fleet Customer | Any amount | Fleet ATM, Total Access Check Card or Select Card PIN swipe. |
| | $1,000 or less | One form of acceptable photo ID. |
| | Greater than $1,000 | Two forms of acceptable ID, one of which must have a photo. |
| "Known Customer" (Fleet Customer or non-account holder) | Any amount | None.<br><br>A "Known" Fleet Customer is defined as being known to an approving individual by sight and by account relationship.<br><br>A "Known" non-account holder is otherwise well known personally and is cashing a Fleet check or an approved off-us check (i.e., from the check cashing table). |
| Non-Customer | $500 or less | One form of acceptable photo ID. |
| | Greater than $500 | Two forms of acceptable ID, one of which must have a photo. |



**Notes:**

- Special identification policies which apply to Welfare Checks and Travelers Checks are given in the appropriate sections for these items.
- Off-Us check cashing is subject to restrictions which are defined in the Off-Us Check Cashing section.
- When "Known Customer" is utilized:
  - There must always be reasonable knowledge of how to locate the individual.
  - If the transacting teller is the approver, no documentation of ID or teller initials are required.
  - If a branch representative other than the transacting teller is the approver, the approving (and now accountable) branch representative must initial the check on the front where the identification would normally be recorded.

Before cashing any check, employees must:

- Ask for identification in accordance with policy,
- Examine the identification to ensure its authenticity (e.g., Are there erasures, alterations? Has the card expired?),
- Compare the identification to the presenter (e.g., Is the birth date reasonable? Does the person resemble the picture?), and
- Record the type of identification, corresponding numbers (see note below), and expiration date on the front, top portion of the check.



**Note:** When accepting a credit card for identification, **do not** record the credit card number on the check. Refer to the following "Recording Credit Cards Used as Identification" for state-specific policies on recording credit card information.



**Recording Credit Cards Used as Identification**

The Bank must ensure that credit card information recorded for identification purposes is secure and that it is not accessible to persons outside the Bank. When recording credit cards used as identification, the policy for each state is detailed in the table below.

| State | Policy |
|-------|--------|
| CT, MA, ME, NY, RI | • Record on the check the credit card **type** and **expiration date**.<br>• If cashing an on-us check, write the **credit card number** on the Flextran journal tape before the transaction.<br>• If cashing an off-us check, enter the **credit card number** in the MISC field on the Off-Us Check Cashing screen.<br>• Do not record the credit card number on the check. |
| FL, NH | • Record on the check the credit card **type**.<br>• If cashing an on-us check, write the **first 6 digits\*** of the credit card number on the Flextran journal tape before the transaction.<br>• If cashing an off-us check, enter the **first 6 digits\*** of the credit card number in the MISC field on the Off-Us Check Cashing screen.<br>• Do not record the credit card number or the expiration date on the check.<br>• Do not record more than the first 6 digits of the card number on the Flextran journal tape.<br><br>**\* Note:** The first 6 digits of the card number identifies the issuing bank. |



**Check Cashing Approved Forms of Identification**



The following are approved forms of identification:

- Fleet ATM Card or Fleet Total Access Check/Select Cash & Check Card with PIN swipe (preferred method)
- "Known Customer" (**Note:** Authorization to use "Known Customer" must be assigned by the Branch Manager)
- Driver's License with photo (Original, not duplicate)*
  *Includes U.S. Territories as listed in the *I.D. Checking Guide* (for example, Puerto Rico); consult the Guide for description.
- New Jersey Non-Photo Driver's License (Original, not duplicate)
- New York State Learner's Permit with photo
- Non-Driver's ID Card (State Issued)
- State, County, or City issued Senior Citizen ID Card with photo
- Military ID Card with photo
- U.S. or Foreign Passport with photo
- Mexican Consular ID Card with photo
- Immigration & Naturalization Service issued Alien Registration Card with photo (Includes Resident Alien card and Employment Authorization IDs)
- State, County, or City issued Welfare/Public Assistance Card with photo
- EBT Card (Electronic Benefits Transfer) with photo
- Native American ID with photo
- Major Credit Card (i.e., MasterCard, Visa, American Express, Novus)
- New Jersey Casino and CT Casino Commission IDs

**Note:** Metro New York branches may accept a non-photo NJ driver's license as a required form of photo ID.