## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ) | **CIVIL NO.: 1:05-CV-10324** |
| **JAY ODUNUKWE, ESQ.,** ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **FLEET BANK BOSTON,** ) | |
| **Defendant.** ) | |
| ) | |

## PLAINTIFF'S OPPOSITION TO CROSS-MOTION
## FOR SUMMARY JUDGMENT

### Introduction

The defendant's cross-motion for summary judgment is laugh-out-loud meritless, mean-spirited, and frivolous.

The motion flatly contradicts the findings of the Massachusetts Commission Against Discrimination based on work by its crack investigator Marzella B. Hightower. Those findings, as further endorsed by Jean A. Clanton, Supervisor, and Walter J. Sullivan, Jr., Investigating Commissioner, credited the claim of discrimination. See Ex. 1.

The smoke screen about the proper identification is reprehensible; and it is haunting like a contemporary commercial version of the old voter rights cases involving improper seals and missed check marks to disqualify minority voters, or the black professionals being targeted for racial profiling in the leafy suburbs. See Ex. 1 and 2.

The cross-motion does not identify what theories, state or federal, should be dismissed. However, the plaintiff's motion for summary judgment is not the shotgun approach and aims at one discreet theory.

With respect to discovery, Rule 56 (f) applies because plaintiff needs to have employee records produced, to depose the tellers at the two branches, the managers of the two branches, and the tapes of the transactions for the theories of the other case. However, the focus of the plaintiff's motion for summary judgment is quite a bit narrower: whether there are material facts in controversy about the defendant's liability under 42 U.S.C. § 1981 (and not Gen. Laws Chapters 151B, §§ 5 and 98, and other statutes). In addition, the defendant is named Fleet because the liability of a corporation lasts three years after dissolution under Massachusetts law so that the patronizing "sics" do not apply.

## **Statement of Facts**

On May 14, 2002, the plaintiff went to the Medway Fleet bank located at 108 Main Street in Medway Massachusetts to make a bank transaction. When he entered the bank at approximately 11:45am, the bank was open for business. Aff. ¶2.

He joined the line of customers waiting to transact some business in the bank. When he got to a teller window, he presented to the teller a check for $1,100 drawn on Fleet bank, made out in his name and endorsed by him. He also presented a valid Massachusetts driver's license and a valid American Express credit card to the teller. Aff. ¶3.

The teller took the check and his identification cards, looked at them and pushed them back to him saying they are inadequate and that they will not cash his check. He asked her what constitutes adequate identification and she said; a government issued identification with a picture or a passport and a major credit card. He told her that his

2

Massachusetts driver's license qualified as a government issued identification and the American Express credit card is a major credit card. Aff. ¶3-4. The teller then raising her voice told him that she will not accept his identification cards and that he should leave. At no time did plaintiff act irrationally or become extremely irate as alleged in Ms. McHardy's affidavit. Aff. ¶5. Plaintiff told her that he will not leave since he had valid and proper identification. She still refused to cash his check. Aff. ¶6. He reached into his wallet and produced a third identification; his Suffolk University alumni identification with his picture on it. The teller looked at it and said that it is not acceptable and only good at Suffolk University. She then told him in a loud voice to leave and that he will not be served. Plaintiff produced a third identification (Suffolk University alumni photo ID) only after the teller had rejected plaintiff's Massachusetts drivers license and American Express credit card. Aff. ¶7. Totally surprised and embarrassed, he requested to speak to the Manager. The plaintiff requested to speak to the manager and not the teller as Fleet Bank alleged in their Cross Motion for Summary judgment. Aff. ¶ 8. The manager came over to the teller's window, glanced at his check and his identification cards, said something to the teller, then pushed the check and his Massachusetts driver's license, American Express credit card and Suffolk University identifications back to him and said that they are unacceptable. The manager told him that he would not be served and that should leave the bank. Plaintiff never used any sexist or foul language, he never said he did not want to deal with 'women' and never said he wanted to see the 'man'. Plaintiff never called the teller a bitch, called anyone a bitch, or used any derogatory language on anyone. The defendant's allegations that plaintiff made those statements and words are totally false. Aff. ¶ 9.

3

He asked the manager why his identification cards are unacceptable and she simply told him to leave. He informed her that he will not leave since he presented valid identification cards as required by law. He again requested to be served. Aff. ¶10. The manager then told him to leave the bank and that he will be forcibly evicted if he did not leave. He did not move. Aff. ¶11. While all this was taking place, there was a long line of customers in the bank. He felt totally humiliated, embarrassed, disgraced. He was made to feel totally worthless. Aff. ¶12.

The manager then took the check and his identification cards and placed them on a vacant teller window and told him to step away from the teller window and that she will talk to him as soon as she finishes what she was doing. Aff. ¶13. He stepped away from the teller window and went to the side. A few moments later the manager called him into her office. Aff. ¶14. Inside her office, she went to her desk, sat down, picked up the phone and made a quick phone call and then dropped the phone. She did not tell the plaintiff who she called or the purpose of the call. Aff. ¶15. She gave him back his check and identification cards and said that he will not be served and that he must leave the bank and should he refuse to leave that he will be forcibly removed. Id. 16. He again asked for an explanation to figure out what is going on and the manager simply stated that his identification cards were inadequate. Id. 17. He told her that what the bank had done to him is wrong, unfair and illegal. He told her that he was totally humiliated and disgraced in front of a lot of people for no reason. He told her that it is very obvious that he was the only black customer in the bank and that they have succeeded in discriminating against him. He told her that he will file a complaint against the bank with Fleet Bank Management for the discriminatory practice.

4

He then left the bank. He was totally distraught and in shock as he left the bank and headed to his car. Upon regaining his composure, he drove to another Fleet Bank located in Medfield Massachusetts about two miles away. At the Medfield Fleet bank, he presented the same Massachusetts driver's license, American Express credit card and check, only this time to the Afro-American teller. The teller cashed his check after reviewing his identification cards. Id. 18-20. He was disgraced and humiliated; he was made to feel worthless. He felt completely inadequate and useless. The treatment and humiliation he received at the Medway Fleet bank caused him much pain, anguish and distress resulting in anxiety, weight loss and sleeplessness. It was a life changing experience and it has a tremendous negative impact on his life. Id. 19-26.

Plaintiff filed a written complaint with Fleet Bank Management complaining about his treatment at the bank. Fleet Bank Management decided not to address the specific issues Plaintiff raised on his complaint. He subsequently filed a complaint at the MCAD

Plaintiff exhausted his administrative remedies and the MCAD entered a finding of probable cause to credit his claim of discrimination against the defendant. See Ex. 1.

## Legal Discussion of the Frivolous Cross-Motion for Summary Judgment

The defendant violated Title II of the Civil Rights Act of 1964, 42 U.S.C. §§ 1981, et seq., is liable for damages for emotional distress, interest, costs and attorney fees.

The definition of "make and enforce contracts" in section 1981 extends the reach of the statute to situations beyond the four corners of a particular contract; the extension

5

applies to those situations in which a merchant, acting out of racial animus, impedes a customer's ability to enter into, or enjoy the benefits of, a contractual relationship. See *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 872 (6th Cir. 2001) (explaining that, in a "commercial establishment" context, liability will attach when a plaintiff "receive[s] services in a markedly hostile manner and in a manner which a reasonable person would find objectively discriminatory.")

The defendant cannot distinguish the appellate authority of the plaintiff from the case. The plaintiff does not have to come forward with direct evidence of racial discrimination. The plaintiff may prove the unlawful intent with circumstantial evidence. The conclusion of discrimination must have "specific, nonconclusory factual support so that the plaintiff must summon evidence from which racial discrimination can be inferred." *Judge v. City of Lowell*, 160 F.3d 67, 75-77 (1st Cir. 1998). This is a very straightforward example of such a violation. The bank is a commercial establishment. The plaintiff, who is of African-American of Nigerian decent, received check cashing services in a markedly hostile manner and in a manner objectively reasonable to call discriminatory: there is no material fact in controversy that given that he was treated with race-based distrustfulness by the white bank employees in the first instance, and fairly and equitably by the Afro-American teller in the bank in the second instance when Plaintiff drove to another Fleet bank, located in Medfield Massachusetts, approximately two miles away, that this is racial misconduct. At the Medfield Fleet bank, he presented the same Massachusetts driver's license, American Express credit card and check to an Afro-American teller. The Afro-American teller cashed his check after reviewing his

6

identification cards. Here, plaintiff received services in a markedly hostile manner and in a manner which a reasonable person would find objectively discriminatory.

It is pellucidly clear that a merchant (the bank), acting out of racial animus, impeded a customer's (plaintiff's) ability to enter into, or enjoy the benefits of, a contractual relationship. See *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 872 (6th Cir. 2001). The complaint is predicated upon a federal statute that traces its origins to section 1 of the Civil Rights Act of 1866, 14 Stat. 27 (1866). This statute, now codified in 42 U.S.C. § 1981, prohibits both public and private racial discrimination in certain specified activities (including the making and enforcement of contracts). *Runyon v. McCrary*, 427 U.S. 160, 168-75 (1976). To state a claim under this statute, a plaintiff must show (1) that he is a member of a racial minority (plaintiff is), (2) that the defendant discriminated against him on the basis of his race (he certainly was treated differently and very shabbily than the other people in the bank), and (3) that the discrimination implicated one or more of the activities enumerated in the statute. *Morris v. Dillard Dep't Stores, Inc.*,277 F.3d 743, 751 (5th Cir. 2001). There is sufficient nexus between the asserted discrimination and some contractual right or relationship for summary judgment.

The case law suggests the nature of the requisite nexus. The Supreme Court originally gave section 1981 a narrow focus, declaring that the statute "does not apply to conduct which occurs after the formation of a contract and which does not interfere with the right to enforce established contract obligations." *Patterson v. McLean Credit Union*, 491 U.S. 164, 171 (1989). But Congress widened the interpretive lens when it enacted the Civil Rights Act of 1991, Pub. L. No. 102-166, § 101, 105 Stat. 1071 (1991). Section 1981, as amended, reads in pertinent part: "All persons within the jurisdiction of the

7

United States shall have the same right in every State and Territory to make and enforce contracts . . . .* * *For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." That Act amended section 1981 by expanding the phrase "make and enforce contracts" to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). The preeminent case is *Morris v. Office Max, Inc.*, 89 F.3d 411 (7th Cir. 1996). There, two black customers were browsing innocently in a retail store. The assistant manager became suspicious and called the police. Id. at 412. The police arrived, hassled the two men (one of whom had completed his purchase and the other of whom had purchased nothing), found no evidence of wrongdoing, and departed (uttering racially derisive comments). Id. The customers sued, accusing the store of violating section 1981. The Seventh Circuit rejected the suit on the ground that the plaintiffs could not "point to specific facts showing that Office Max deprived them of any of the enumerated rights in § 1981 . . . specifically, the right to make and enforce a contract. They were denied neither admittance nor service, nor were they asked to leave the store." Id. at 414. Here, by contrast, the plaintiff was denied service and asked to leave the bank with which he conducted business. In *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1117-18 (10th Cir. 2001), cert. denied, 122 S. Ct. 1071 (2002), the Tenth Circuit ruled that a woman of African-American descent who allegedly had been ejected from a store on the basis of her race could not pursue a section 1981 claim because she had neither attempted nor planned to make any specific purchase

8

(and, accordingly, could not prove any interference with a contractual relationship). Id. The court made plain that "the mere expectation of being treated without discrimination while shopping" will not support a claim under section 1981. Id. at 1118. In contrast, the court upheld a judgment for another African-American woman, ejected at the same time, who was attempting to redeem a coupon that she had received incidental to a previous purchase. Id. at 1103-05. The court concluded that the coupon was tantamount to an option contract, and that the store could be held liable for its race-based denial of the right to redeem it. Id. at 1104. The distinction drawn by the Tenth Circuit between the two plaintiffs aptly illustrates the need for a contractual nexus in a suit premised on 42 U.S.C. § 1981. This case is distinguishable from *Garrett v. Tandy Corp.*, 295 F.3d 94 (1st Cir. 2002) because the plaintiff here has an ongoing commercial relationship with his bank unlike the person passing through a store in *Garrett*.

Respectfully submitted,
Jay Odunukwe, Esq.,
By his attorney,

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail (by hand) on _____

_____

Robert O. Berger
11 Beacon Street, Suite 1210
Boston, MA 02108
617-423-7575
BBO# 038900

9

# **EXHIBIT 1**

**COMMISSION AGAINST DISCRIMINATION**
**One Ashburton Place, Boston, MA  02108**
**(617) 994-6000 Fax: (617) 994-6024**
**INVESTIGAITON FACT SHEET**

| To: | Jay Odunukwe         From: | Mass Commission Against Discrimination |
|-----|----------------------------|----------------------------------------|
|     | 9 Fieldmont Street.        | One Ashburton Place, Room 601          |
|     | Hyde Park, MA  02136       | Boston, MA 02108                       |

| Case:  Jay Odunukwe v. FleetBank | Docket No:  021402452 |
|----------------------------------|-----------------------|
| Investigator: Marzella B. Hightower | EEOC No:  None     |

Investigation Summary:
Whether the Complainant was discriminated against in a place of public accommodation in being denied service. On May 14, 2002, Complainant went to the Respondent's Medway Branch to cash a check for $1,100.00 (one thousand and one hundred dollars). Complainant was a non-customer with a check drawn on Fleet account held by the Complainant's relative. Complainant alleges he presented two (2) forms of identification, a driver's license and valid American Express credit card, but the Respondent rejected both forms of identifications; he then presented his Suffolk University identification card and was told that the student identification card was only good at the University and that it had expired. He believes he was denied because of his race/color (Black) in violation of M.G.L. 272, Section 98. The Respondent asserted Complainant failed to provide proper identification accordance to the Respondent's check cashing policy.

Investigation revealed:
Investigation revealed Respondent's policy states that two forms of acceptable identification, one of which a photo identification is required when the check is greater than $500.00 (five hundred dollars). Another is a major credit card, such as American Express. The investigation revealed that upon being denied by the teller, the Complainant requested to see the manager. The manager spoke to the Complainant in her office and made a telephone call to the customer of the account. The manager was unable to communicate with the account holder at home or work.

Investigation further revealed that the Complainant immediately went to another Fleet Bank located in Medfield and was able to cash the check with his Massachusetts driver's license and his American Express card with out incident.

Conclusion:
Based on the foregoing findings, one could form the reasonable belief that the Respondent discriminated against the Complainant by denying him services because of his race/color. Genuine issues of material fact are present which are reserved for public hearing. Therefore, a finds of probable cause is warranted.

Disposition:
Therefore, pursuant to Section 5 of Chapter 151B, of the Massachusetts General Laws, and in conformity with the foregoing Findings of Facts, I have this day found that probable cause exists for crediting the allegations of the subject complaint. Pursuant to said Section 5, the parties will be

- 2 -

afforded an opportunity to participate in a conciliation conference at the offices of the Commission. If the [arties do not choose to participate, or if such conferences does not result in an informal resolution of this matter, the case will be certified for public hearing and final disposition on this matter will be rendered by the designated Hearing Commissioner.

Marzella B. Hightower
Investigator

Jean A. Clanton  (M·B)
Supervisor

Walter J. Sullivan, Jr.
Investigating Commissioner

# EXHIBIT 2



## Massachusetts Commission Against Discrimination

**Jay Odunukwe v. Fleet Boston Financial**
**Docket No. 02BPA02452**
**October 29, 2002**

### Complainant's Response To Fleet Boston's Submissions

Fleet Boston has chosen deception, lies, defamation of character and distortion of facts in a frantic bid to hide their illegal discriminatory acts.

Instead of factually responding to my complaint, FleetBoston is engaging in character assassination, defamation, outright manipulation of facts and bold faced lies.

#### My Response to Specific Allegations

1. Fleet Boston in its response stated that:
"*Personnel at Fleet's Medway Branch declined to cash a check for Odunukwe simply because he failed to present forms of identification that were acceptable under Fleet's written policy*".

What Happened – I presented two pieces of identification, a Massachusetts driver's license (copy enclosed) and an American Express Credit Card (copy enclosed). The teller rejected both identification cards as being inadequate. Upon her rejection I searched my wallet and presented a third identification card, my Suffolk University Alumni identification card (copy enclosed). The teller rejected it also saying that "it is only good at Suffolk University and had expired".

My examination of Fleet's written policy shows that the IDs I presented at the bank were valid and adequate.

2. Fleet Boston alleges that I was disruptive and hostile:
"*if there was anything surprising about the incident in question, it was the hostile and disruptive conduct that Odunukwe displayed immediately upon learning that the teller could not cash his check. His behavior was so outrageous that a Medway police officer, upon witnessing the incident while conducting personal business, remained at the branch to ensure the safety of those present, leaving only after Odunukwe exited*".

How FleetBoston came to this conclusion is beyond me. It is an outright lie and a clever distortion of facts. When the teller first refused to serve me stating that I did not have adequate identification even though she had in her possession my driver's license and my American Express Credit Card. I asked her politely "what forms of identification will be adequate". She stated that I have to present two forms of positive identification of which one must be government issued photo identification plus a major credit card.

1

I told her that what I had given her (my driver's license and my credit card) is what she asked for. It was at this stage that she raised her voice and asked me to leave that I should not be served because I did not present adequate identification.

When she raised her voice telling me that I should not be served and that I should leave, I told her that I would not leave because I had valid and adequate identification. I was never hostile or disruptive but I was firm in demanding that I should be served and I was firm in stating that I would not leave even when the branch manager stated that I will be forcibly evicted if I do not leave. My behavior while at the bank was not in anyway outrageous.

Fleet Boston has no valid or logical explanation or defense for its illegal discriminatory actions against me. They are now resorting to total fabrications and innuendo in a shameful attempt to cover their illegal acts.

3. Fleet Boston is distorting the facts and deliberately excluding vital facts in its response to my complaint. From page 3 of Fleet Boston's response:
*"in response to McHardy's request, Odunukwe presented a Massachusetts drivers' license and other forms of identification card, that were not acceptable under the Check Cashing Policy. McHardy informed Odunukwe that she could not cash the check unless he had two acceptable forms of identification. Odunukwe then searched his wallet for another form of identification but was unable to find anything other that his driver's license that conformed with the Check Cashing Policy".*

When I got to the bank on May 14 2002, there was a line of customers waiting with only two active teller windows. While in line, I had my check and identification cards ready and when it got to my turn, I approached the teller window and handed my check and identification cards to the teller. The teller looked at them and stated that they were inadequate.

Fleet Boston's claim that I presented only a Massachusetts driver's license and other ineligible forms of identification is inaccurate. Rather, I presented my Massachusetts driver's license and my American Express Credit card. When the teller rejected these two identity cards (Massachusetts Driver's License and American Express Credit card) I brought out my wallet and took out my Suffolk University Alumni ID card. I gave the teller this Suffolk University Alumni card, she rejected it stating that the ID is only good at Suffolk University and that it has expired.

FleetBoston is now claiming that I only presented a Massachusetts driver's license and an expired Suffolk University ID. They are now claiming that I did not present an American Express credit card. This is absolutely not true. It is quite absurd that the bank is making this false statement. FleetBoston is intentionally misstating the facts.

The teller saw all three identification cards, she had them in her hands, and she cannot now claim she never saw all three identification cards. The Branch Manager, Jean Brennan also saw all my identification cards, she handled them, looked at them and took

2

them to her office. Fleet Boston's claim that I only presented a Massachusetts's driver's license and an expired Suffolk University ID is a lie and they know it.

4. The most troubling of Fleet Boston's response is their decision to resort to defamation. They defamed my character, my person and my reputation. They did this in an egregious and wicked manner. FleetBoston called me a "sexist".

From page 3, second paragraph:
*"upon being informed that McHardy could not cash the check, Odunukwe became extraordinarily hostile, yelling at McHardy and calling her a 'bitch'"*.

This is a very wicked and vicious accusation by FleetBoston. I did not call the teller a bitch. I did not call the teller anything that could be mistaken for the word "bitch". I did not call the teller any name. I did not insult the teller in any way, shape or form.

FleetBoston even put the word "bitch" in parenthesis for emphasis knowing fully well that I did not say such. That was vicious.

This accusation is not true. This goes against everything I stand for, it goes against my personality and it goes against my principles. This is a malicious accusation by FleetBoston. They defamed my character. They defamed my person.

4. Fleet Boston simply is not interested in stating what actually happened on May 14, 2002. From page 3, second paragraph:
*"even before McHardy could fully explain the reason she could not cash the check, and despite the fact that she had not drawn any conclusions as to his race, Odunukwe inexplicably accused her of race discrimination"*.

This is absolutely not true. I did not accuse the teller of race discrimination. I hope that FleetBoston has the evidence to back up their "facts".

FleetBoston claims that I was so loud and animated that there was a concern that I would react physically which prompted the Medway police officer who feared for the direction of my anger might take to remain in the bank until I left.

This is absurd. I was not louder than the teller. I was not in anyway physically threatening to anyone. There is no basis for this allegation by FleetBoston.

I believe that all the security video cameras in the bank at the time I was in the bank must be made available. I believe also that the Medway police officer present in the bank that day will be available to testify under oath how I was physically threatening to anyone in the bank.

5. Fleet Boston's misrepresentation of the facts is quite pathetic and laughable. From page 3, last full sentence:

*"consistent with her nature, McHardy remained calm and respectful when interacting with Odunukwe, despite his increasingly hostile and offensive response. Given Odunukwe's hostility, McHardy believed it was in her self-interest not to incite him".*

This is simply not true. I was not in anyway while at the bank hostile and/or spoke in an offensive manner to the teller or the Branch Manager or any other person at the bank.

6.   From page 4, first full paragraph:

*"ultimately, McHardy was unable to calm Odunukwe and asked the Branch Manager, Jean Brennan, to intervene. Odunukwe responded by displaying a blatantly sexist attitude, saying that he did not wish to deal with 'women' and that he wanted to see 'the man'".*

This is the most disgusting and hurtful lie by FleetBoston. FleetBoston is calling me a "sexist" and attributing words to me that I never uttered.

I was the one that requested for the Branch Manager, when the teller refused to serve me after I presented valid identifications as required by law. I did not in any way, shape or form question the gender of the Branch Manager. This charge by FleetBoston is reprehensible. A lie it must not get away with.

I did not at any time and in any way, shape or form state that I did not wish to deal with "women". I did not in any way, shape or form state that I want to see "the man". These are very wicked lies by FleetBoston and they know fully well that they are lies. FleetBoston is maliciously defaming my character, person and name.

I was severely distressed and shocked when I read this inflammatory charge by FleetBoston. I will be filing a charge of malicious defamation of character against FleetBoston for their intentional defamation of my character.

I am not a sexist, never was and never will be. This is a complete assassination of character. This is against everything I stand for. I am ready, willing, and able to bring character witnesses from different walks of life to testify to my character and person. To testify that I am not a sexist, that such language as FleetBoston is alleging could never have come from me.

My college advisor was a woman, a highly regarded and intelligent woman. My current pro bono client is a woman. I have seven sisters in my family. I head a non-profit organization where one of our main objectives is geared specifically towards helping and empowering women both here in the United States and in Third World countries. I have done a lot to raise the status of women around the globe. That is the more reason why the "sexist" charge by FleetBoston is very hurtful.

While I was in Jean Brennan's office, she still had my identification cards (Massachusetts driver's license and American Express card) and my check with her. She made a quick phone call and told me that I would not be served. I then asked Jean

4

Brennan why they would not serve me despite the fact that I have adequate identification and a valid check. She simply told me that I will not be served and I that should leave.

When I left the bank, FleetBoston succeeded in illegally denying me service on the grounds of my race in violation of state and federal laws.

When I drove to the Medfield branch which was about 5 – 7 minutes away, I presented the same two identification cards (Massachusetts driver's license and American Express card). The teller at this branch, a young black woman cashed my check.

Fleet Boston is attempting to use lies, distortions and malicious allegations to hide their illegal discriminatory act against me.

While I was at FleetBoston in Medway on May 14, 2002, every customer there was served. I was the only black customer at the bank and I was the only one denied service. I had the right to be there, I presented valid and adequate identifications as required by law and I was still denied service and threatened with forcible eviction if I did not leave. If this is not discrimination, what is.

Fleet Boston did not at anytime while I was in the bank question the authenticity or validity of my identification cards (Massachusetts Driver's license and American Express credit card) or the validity or authenticity of my check. I am willing, ready and able to produce further evidence to support the facts and positions I laid out in my complaint.

In due time, I will request that FleetBoston produce all unedited video tapes in the Medway Fleet Bank on May 14, 2002.

FleetBoston should also be compelled to make available the teller that handled my transaction and the Manager Jean Brennan so that they can be question under oath. I will also request that the police officer be made available for questioning under oath.

FleetBoston have a history of systematically discriminating against minorities across this region in various spheres of its business dealings. From its disparate treatment of African Americans in its Mortgage Loan Division as compared to its treatment of whites to denial of service to African Americans. The fact remains that only a few people file complaints.

I filed a complaint with FleetBostons's Customer Service which was ignored, and then two months later, I filed the complaint with MCAD when Fleet failed to address my complaint. Now Fleet Boston is using lies and fabrications in an attempt to cover their illegal discriminatory acts. FleetBoston should not be allowed to get away with this.

Submitted by

Jay Odunukwe

October 29, 2002

5