UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

JAY ODUNUKWE, ESQ., )  CIVIL NO.: 1:05-CV-10324
   Plaintiff, )
)
v. )
)
FLEET BANK BOSTON, )
   Defendant. )

## SUPPLEMENTARY AFFIDAVIT OF PLAINTIFF IN OPPOSITION TO CROSSMOTION FOR SUMMARY JUDGMENT

Then appeared the plaintiff and swore and affirmed as follows:

1. I am the Plaintiff in the above-entitled complaint.

2. I am an African-American of Nigerian decent.

3. On May 14, 2002 at around 12:00 and 12:20 P.M. I drove to the Fleet Bank in Medfield, Massachusetts after being denied service at the Fleet Bank in Medway about two miles away.

4. At the Medfield bank, I approached a teller who signaled me to her teller window. This teller was an African- America woman.

5. At the teller window I presented a check in the amount of $1,100 made out in my name and endorsed by me (same check I presented at Fleet Bank In Medway) and my Massachusetts driver's license and American Express Credit Card (the same identifications I presented at Fleet Bank in Medway).

6. The teller took the check and my two identifications and wrote something down (I could not see what she wrote since we were separated by a partition) she then called another female, a Caucasian looking female (who I suppose was her supervisor), this person looked at my check and identifications and wrote something and left the teller (this lasted a few seconds).

7. The teller cashed my check and handed back to me my identification cards and $1,100 in cash.

8.  I took the cash and my identifications and then gave the teller a completed deposit slip and a check for deposit in the amount of $1, 333 (an out of state check). This check was endorsed by the maker of the check I had cashed (my sister) and had asked me to deposit it into her account after I had cashed my check.

    The teller did not know I was going to be making a deposit when she cashed my check. I made the deposit only after I had cashed my check.

9.  The teller took the deposit slip and deposit check and processed the deposit. This African-American woman teller processed my deposit alone without the help or supervision of the Caucasian female that she consulted when she cashed my check.

10. The teller gave me a receipt after processing the deposit. I left the bank.

11. No one at this bank asked me any questions about my identifications. It was a straight forward transaction.

### Plaintiff's Response To MaryBeth McHardy's Affidavit

12. The teller never asked me whether I was a Fleet Bank Customer. *When I approached her teller window, I presented my check already endorsed by me and two forms of identification; my Massachusetts Drivers license and American Express Card to the teller.*

13. The teller took the check and the two identification cards, looked at them and pushed them back to me saying they were inadequate (see plaintiff's affidavit) The identification cards presented to Ms. McHardy were (1) a valid Massachusetts Drivers License and (2) A valid American Express Card. She rejected both of them.

14. *I reached into my wallet and produced a <u>third piece of identification</u>; my Suffolk University Alumni identification card with my picture <u>only after</u> she rejected both my Drivers License and American Express Credit Card as inadequate.* She also rejected the third piece of identification. Her claim that I did not present an American Express Credit Card is inaccurate.

15. Ms. McHardy alleged in her affidavit that I became extremely irate when she refused to cash my check. *This also is inaccurate.* When she refused to cash my check after I had presented two valid identification cards in compliance with Fleet Bank check cashing policy, she asked me to leave. *I asked her politely what constituted proper identification* and she said; two forms of positive identification of which one must be government issued photo identification and a major credit card.

16. *I told her that what she has in front of her is exactly what is required*; at this stage Ms. McHardy raised her voice and told me to leave. I was never irate, talk-less of being extremely irate. When she raised her voice telling me that I will not be served and that I should leave, *I told her that I will not leave because I had valid and proper identification. I was firm in demanding service and firm in stating that I will not leave. I was never hostile and I was not irate. Her claim that I was extremely irate is totally inaccurate.*

17. It is quite telling and indeed horrifying to me to what lengths McHardy and Fleet Bank will go to demonize and destroy my character and person in order to cover their illegal act.

18. *I did not call Ms. McHardy a 'bitch' or anything that could be mistaken for the word 'bitch'. I never accused her of being a racist. I did not call her any name and did not insult her in any way.*

19. Ms. McHardy's claim in her affidavit that she attempted to calm me down never happened. She told me to leave after she declined to cash my check even though I had presented valid identification cards. *I refused to leave and she continued to demand that I leave. I was never out of line and I was never irate but I was firm in demanding service.* Her allegation that she attempted to calm me down is inaccurate.

20. When it became obvious to me that Ms. McHardy will not serve me, *I requested to speak to the Manager. I was the one that asked for the Manager.* McHardy did not ask for the Manger as she alleged in her affidavit. *I did.*

21. Ms. McHardy also stated in her affidavit that when he Manager approached that I stated that I did not want to deal with 'women' and that I wanted to see the 'man'. This is reprehensible. I cannot find the words to express the shock and disbelief I felt from reading these accusations from Ms. McHardy's affidavit. This is total fabrication. It never happened.

22. Ms. McHardy is attributing to me a word I <u>never</u> uttered. She is calling me a sexist. I could not believe in my wildest dreams be defending myself of comments I never made. *I did not at any time and in any way, shape or form state to Ms. McHardy or anyone else that I did not want to deal with 'women' or that I want to see the 'man'.* Nothing can be further from the truth. This never happened. It is interesting to note here that the person that cashed my check and processed my check in Medfield Fleet bank was a woman.

23. Ms. McHardy then concludes her affidavit by stating that I went to Fleet bank in Medfield to cash the check and that my transaction at this Medfield branch was handled by an inexperienced teller who did not obtain two forms of proper identification. *I am in no position to say whether the teller at Fleet Bank in Medfield is experienced or inexperienced.* At the Medfield Fleet Bank, I presented two valid identification cards (Massachusetts Driver's License and American Express Card) and a check. The check was without any questions asked and without any incident (see affidavit). I then made a deposit. Ms. McHardy's claim in her affidavit that I did not present two valid forms of identification is inaccurate.

24. Ms. McHardy's attempts to fabricate and manufacture things that never happened on May 14, at Medway Fleet Bank only goes to show to what lengths the bank will go to cover their illegal conduct.

## Response To Jean Brennan's Affidavit

25. As stated earlier, when Ms. McHardy refused to cash my check after I had presented to valid forms of identification, I requested to talk to the Manager. Ms. McHardy went and called someone who came over to the teller window and identified herself as the Manager.

26. I never asked for the 'man'. This is simply an attempt by Fleet Bank to portray me as a sexist by having Ms. McHardy and Jean Brennan attribute words I never uttered. Repeating a lie over and over does not turn it into a truth.

27. Jean Brennan also alleges that I was disruptive. As I had stated earlier, I was not in any way disruptive, hostile or irate while at the Medway Fleet Bank on May 14, 2002. When I refused to leave after Ms. Brennan threatened to forcibly remove me if I did not leave; we stood there for a few moments with no one saying anything before she asked me to step aside and that she will be with me after she concludes what she was doing. I stepped aside.

28. A few minutes later, she took me to her office still with my check and identification cards in her possession. In her office she made a quick phone call which was very brief. I did not know if she talked to anyone. She hung up the phone and told me they will not serve me and that I must leave. I demand again an explanation as to why I am being denied service and she told me again to leave the bank or be forcibly removed.

29. Ms. Brennan never told me who she called and never told me she was going to call the maker of my check to verify the authenticity of the check. It is interesting to point out that no one at Fleet Bank on May 14, 2002, ever questioned the validity and authenticity of the check.

30. Jean Brennan alleging that she called the maker of the check to verify the authenticity of my check is only a smoke screen. Even though the maker of the check, Ms. Joy Odunukwe was available at the time I was in Fleet Bank in Medway, no one called her on the phone or spoke to her. The issue here remains why Fleet Bank denied me service after I had presented valid identification cards as required by bank policy.

31. I left Jean Brennan's office and the bank only after she threatened to have me forcibly removed. Before I left I complained to her how they had disgraced and humiliated me in the bank for no justifiable reason. I told her that I will file a complaint against her and the bank with Fleet Bank Management. I then left her office and the bank.

32. The allegations in her affidavit that she never told me to leave the bank are inaccurate; she told me to leave the bank several times and that my failure will result in forcible eviction.

33. Ms. Brennan further alleges in her affidavit that my check was cashed in the Medfield branch because I made a deposit as part of my transaction. Though I do not see the relevance of whether or not I made a deposit, I will address it.

34. *First*, the account upon which I presented a check at Fleet Bank had more than enough funds available to clear my check. I did not need to make a deposit in the drawing account to enable the check to clear and no one at either branch ever said there were insufficient funds in the drawing account to clear the check.

35. *Second*, the deposit I made at the Medfield Branch was a separate transaction. I made the deposit only after I had cashed my check. The teller, an African-American woman did not know I intended to make a deposit when she cashed my check (see plaintiff's supplementary affidavit). I made the deposit only after I had finished the

first transaction and the cash in my possession. Therefore, the claim that Medfield Fleet Bank cashed my check because I also made a deposit is not true.

36. My intention at the Fleet Bank in Medway was to also conduct two separate transactions; cash the check and then make a deposit. Since I could not cash my check at the bank, I never got to the second transaction which is to make the deposit.

37. *Third,* the check I deposited at the Medfield branch was an out of state check which the bank could not have used to cover the check I cashed. Fleet Bank attempting to conclude that because I made a deposit contributed to their decision to cash my check with inadequate identification cards makes no sense. Furthermore, as I had said earlier, I had already cashed the check and the cash in my possession before I made the deposit at the Medfield branch.

38. Ms. Brennan further alleged in her affidavit that upon her review of the copy of my check, the deposit and the journal tape of my transaction at the Medfield branch, it showed that the copy of my check did not list a credit card type or expiration date. *I have no control over what the bank chooses to write or not write on the check.* It is also interesting to note here that I had made similar transactions (cashed checks) at Fleet Bank and other banks as well and no credit card information were written on the cashed check.

### Response To Affidavit Of Pamela Martin

39. Pamela Martin states in her affidavit that she was the assistant manager at the Medfield branch of Fleet bank in May 2002.

40. She states that she authorized the teller to cash a check for me, a non-Fleet Bank customer who did not have sufficient identification. She alleged that I presented a

driver's license and another identification, which she cannot specifically recall, and that it was not an approved form of identification.

41. Ms. Martin's statement that I did not have sufficient identification on May 14, 2002 when I came into the Medfield branch to cash my check is inaccurate. When I came to the branch, I presented two forms of identification (Massachusetts driver's license and American Express Credit Card) to the teller as well as my check. The teller who is an African-American woman took the check and my two identification cards, wrote something down and called another person (a Caucasian female) who I suppose was her supervisor. This second person looked at my check and identification cards, wrote something down and left the teller. Neither of them said anything to me all this while. The teller then cashed my check and handed to me my identification cards and $1,100 in cash.

42. After I cashed the check and with the cash in my possession, I presented a deposit slip and a check for deposit to the same teller. The teller processed my deposit without any input on consultation with the woman that she had consulted when she cashed my check.

43. Ms. Martin's allegation that my check was cashed only because I made a deposit to the account of the maker of my check is inaccurate and false. As stated earlier, I made two transactions; first, I cashed the check and with the cash in my possession I made the second transaction when I made the deposit. Neither the teller nor Ms. Martin knew I intended to make a deposit when my check was being cashed. Therefore, Ms. Martin's claim that she made an exception to cash my check because I also made a deposit when I did not present sufficient and valid identification cards is not true.

44. Even Ms. Martins statements as to what the journal tape (which I have seen) shows as to the times the transactions were made supports my points here. She said the

journal tape showed that my check was cashed at 12:18 pm while the deposit was at 12:20 pm, a full two minutes apart. This piece of information shows three things:
   a. My check was cashed before the deposit was made.
   b. The deposit was only after the check was cashed and
   c. There were two independent transactions with two different transaction numbers.

45. Ms. Martin also alleges in her affidavit that the teller was required by Fleet Bank policy to record the credit card type and expiration date on the check when a credit card was being used as a form of identification.

46. Again it is not for me to decide for Fleet and its employees what to write or not write in the check I cashed. What is clear is that I presented two valid and proper identification cards and a valid check and my check was cashed. That the teller or Ms. Martin chooses to write or not write my credit card information on the check is their decision and had nothing to do with me. It is interesting to note here that even the improper identification that Ms. Martin alleges I presented was also not recorded anywhere on the check or journal tape.

47. Ms. Martin concludes her affidavit by stating that she cashed my check because she made an exception since I also made a deposit. This is simply not correct. It is just a statement of convenience. Ms. Martin did not even know I made a deposit and she did not process my deposit. The deposit was processed exclusively by the African-American teller.

48. It is also interesting to note that back in 2003; Ms. McHardy alleged in her affidavit that the teller that cashed my check at the Medfield branch was an inexperienced trainee. Now in 2005, Ms. Martin submits an affidavit stating she was the assistant manager that authorized and cashed my check because I also made a deposit.

## Denial Of Service Was Discrimination Based on Race

49. In May 14, 2002, while I was at the Fleet Bank in Medway, I was the only black person at the bank. There was no other black person in the bank all the time I was there. Every other customer in the bank while I was there was served. I was the only person denied service. I had valid and proper identification cards, I presented a valid check, and I had a valid business purpose to be at the bank. I was denied service because of discrimination based on race. But for my race, I would have been served.

50. With respect to Rule 56F, I certify that I will need to do discovery in the form of depositions and production of documents and things with respect to various theories of the case except for the Section 1981 claim.

Signed under the pains and penalties of perjury on this ____1____ day of July 2005.

JAY ODUNUKWE, ESQ.

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by ~~mail~~ (by hand) on _____