UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAY ODUNUKWE, ESQ., )<br>    Plaintiff, )<br>    )<br>v. )<br>    )<br>FLEET BANK BOSTON, )<br>    Defendant. )<br>    ) | CIVIL ACTION NO.: 1:05-CV-10324 |

## PLAINTIFF'S STATEMENT OF MATERIAL FACTS

1. Plaintiff is an American citizen of African descent and is black. (Amended Complaint and Jury Trial Demand, ¶1).

    **RESPONSE:** Uncontested.

2. On May 14, 2002, plaintiff entered the Medway Fleet bank located at 108 Main Street in Medway, Massachusetts ("Medway Fleet branch") to cash a check. Plaintiff was not a Fleet customer as of May 14, 2002 and had never previously been inside the Medway Fleet branch. (Deposition of Jay Odunukwe dated August 5, 2004, at 18-20) [Kamm Aff., Ex. 1].

    **RESPONSE:** Contested. The claim that the plaintiff is not a customer at the time of the incident is contested. The plaintiff and his sister, Joy I. Odunukwe, provide affidavits. They both are African-American professionals. Joy has a doctorate in pharmacy. Jay has a doctorate in law and is a highly regarded Boston attorney. See Affidavit of Joy Odunukwe, ¶ 1-4, and Jay Odunukwe, ¶ 1-3. Jay had been at the bank location where the incident occurred several times in the past and had been a Fleet customer for many years before moving to another bank. Id. at ¶ 5. Joy had issued a check on her Fleet account to

      her brother, and had asked her brother to cash a check on her Fleet account at the time of the incident. Op. Cite, at ¶ 5.

3.    Plaintiff presented a check for $1100.00 to Medway teller Marybeth McHardy to be cashed. Fleet's check cashing identification policy required a non-Fleet customer cashing a check over $500 to present two types of acceptable identification. Plaintiff asserts that he presented a Massachusetts driver's license and an American Express card to Ms. McHardy. Ms. McHardy looked at this identification and told him that he did not have proper identification and could not cash his check. (Affidavit of Marybeth McHardy) [Kamm Aff., Ex. 2]; (Dep. of Jay Odunukwe dated August 5, 2004, at 25-28) [Kamm Aff., Ex. 1]

    **RESPONSE:** Contested. On May 14, 2002, the plaintiff went to the Medway Fleet bank located at 108 Main Street in Medway Massachusetts to make a bank transaction. Aff. of Jay Odunukwe, ¶ 4. When he entered the bank at approximately 11:45 a.m., the bank was open for business. Id. ¶ 4. He joined the line of customers waiting to transact some business in the bank. Id. 6-7.  When he got to a teller window, he presented to the teller a check for $1,100 drawn on Fleet bank, made out in his name and endorsed by him. He also presented a valid Massachusetts driver's license and a valid American Express credit card to the teller. Aff. ¶ 7-9. The teller took the check and his identification cards, looked at them and pushed them back to him saying they are inadequate and that they will not cash his check. He asked her what constitutes adequate identification and she said; a government issued identification with a picture or a passport and a major credit card. He told her that his Massachusetts driver's license qualified as a government issued identification and the American Express credit card is a major credit card. Aff. ¶ 7-9.

4. Plaintiff claims that he produced a third form of identification, a Suffolk University alumni identification. According to plaintiff, Ms. McHardy returned the Suffolk ID to him, telling him that it was only good at Suffolk and had expired. He asserts that she then repeated in a raised, firm voice that she could not serve him. (Deposition of Jay 3 Odunukwe dated August 5, 2004, at 29-32) [Kamm Aff., Ex. 1]. Plaintiff testified that at this point he also raised his voice and told Ms. McHardy that he had proper identification and would not leave. (Deposition of Jay Odunukwe dated August 5, 2004, at 31-32) [Kamm Aff., Ex. 1].

    **RESPONSE:** Uncontested. Plaintiff produced a third form of identification, a Suffolk alumni identification. According to the plaintiff, Ms. McHardy returned the Suffolk ID to him, telling him that it was only good at Suffolk and had expired. She then repeated in a raised, firm voice that she could not serve him. At this point, he also raised his voice and told Ms. McHardy that he had proper identification and would not leave.

5. Plaintiff then asked to speak with Ms. McHardy's manager. Ms. McHardy left the teller window briefly and returned with the branch manager, Jean Brennan. (Deposition of Jay Odunukwe dated August 5, 2005, at 32) [Kamm Aff., Ex. 1]; (Affidavit of Marybeth McHardy) [Kamm Aff., Ex. 2].

    **RESPONSE:** Uncontested. Plaintiff then asked to speak with Ms. McHardy's manager. Ms. McHardy left the teller window briefly and returned with the branch manager, Jean Brennan.

6. Ms. Brennan looked at plaintiff's identification and told him that he did not have proper identification and had to leave. (Deposition of Jay Odunukwe dated August 5, 2004, at 34-35) [Kamm Aff., Ex. 1].

    **RESPONSE:** Contested. Defendant claims that Ms. Brennan looked at plaintiff's identification and told him that he did not have proper identif

7. Fleet's check cashing identification policy in effect in May 2002 required plaintiff, as a non-Fleet customer cashing a check over $500, to provide two forms of approved identification. The policy listed the forms of approved identification. Student identification cards are not included on this list. ( Brennan Affidavit, ¶5 and Ex. A thereto) [Kamm Aff., Ex. 3].

    **RESPONSE:** Not relevant to this claim.

8. According to plaintiff, Ms. Brennan told him that he had to leave or they would evict him. He told her he was not going anywhere. (Deposition of Jay Odunukwe dated August 5, 2004, at 37-38) [Kamm Aff., Ex. 1].

    **RESPONSE:** Uncontested but incomplete.

9. Ms. Brennan then asked plaintiff to come into her office. Plaintiff agreed to do so. (Deposition of Jay Odunukwe dated August 5, 2005, at 38) [Kamm Aff., Ex. 1].

    **RESPONSE:** Uncontested but incomplete.

10. Ms. Brennan made a phone call while plaintiff was in her office. Ms. Brennan has attested that she attempted to contact the drawer of the check, Joy Odunukwe, to confirm that Ms. Odunukwe intended to give the check to plaintiff. (Affidavit of Jean Brennan, ¶3 [Kamm Aff., Ex. 3]. Plaintiff does not know whether she attempted to contact the drawer of the check to determine whether or not it was valid and does not recall if she said anything on the telephone. (Deposition of Jay Odunukwe dated August 5, 2004, at 40-41) [Kamm Aff., Ex. 1].This is contradicted by the affidavit of Joy Odunukwe.

    **RESPONSE:** Uncontradicted.

4

11. After Ms. Brennan hung up the phone, plaintiff claims that she told him that she could not cash the check and that he had to leave the bank or they would forcibly remove him. According to plaintiff, he told her that what she has done is illegal and he then left. Plaintiff estimates that his interaction with Ms. Brennan lasted three minutes, and his interaction with Ms. McHardy lasted approximately five minutes. (Deposition of Jay Odunukwe dated August 5, 2005, at 42-43) [Kamm Aff., Ex. 1].

    **RESPONSE:** The claim is based on inferences, see FINDING OF PROBABLE CAUSE, Exhibit 1.

12. Plaintiff testified that neither Ms. McHardy nor Ms. Brennan had mentioned his race or made any derogatory comments to him on May 14, 2002. (Deposition of Jay Odunukwedated April 19, 2004, at 56) [Kamm Aff., Ex. 1].

    **RESPONSE:** See Response 12.

13. Plaintiff testified that he does not know whether other Fleet customers were treated differently than he was treated. (Deposition of Jay Odunukwe dated April 19, 2006, at 57-58) [Kamm Aff., Ex. 5].

    **RESPONSE:** The problem with all this is simple; one branch of Fleet cashed the check and the other would not, and that apparently was because of racial profiling.

    **MATERIAL FACTS OMITTED**

14. After leaving the Medway Fleet branch, plaintiff went to the Fleet branch in Medfield, Massachusetts ("Medfield Fleet branch"). He presented a check drawn on Ms. Odunukwe's account in the amount of $1,100 to be cashed. According to plaintiff, he presented a Massachusetts driver's license, and an American Express credit card for

5

identification. The teller called over a white female to her window who initialed something and left. He does not know if it was some form of approval for the transaction. (Deposition of Jay Odunukwe dated April 19, 2006, at 46-47) [Kamm Aff., Ex. 1]. Pamela Martin, branch operations manager at the Medfield Fleet branch in May 2002, has attested that she made an exception to the check cashing policy to allow plaintiff to cash the check. (Affidavit of Pamela Martin, ¶¶2-3) [Kamm Aff., Ex. 4].

**RESPONSE:** The teller then raising her voice told him that she will not accept his identification cards and that he should leave. Aff. ¶10. Plaintiff told her that he will not leave since he had valid and proper identification. She still refused to cash his check. Aff. ¶11. He reached into his wallet and produced a third identification; his Suffolk University alumni identification with his picture on it. The teller looked at it and said that it is not acceptable and only good at Suffolk University. She then told him in a loud voice to leave and that he will not be served. Aff. ¶12-13. Totally surprised and embarrassed, he requested to speak to the Manager. Aff. ¶ 14. The manager came over to the teller's window, glanced at his check and his identification cards, said something to the teller, then pushed the check and his Massachusetts driver's license, American Express credit card and Suffolk University identifications back to him and said that they are unacceptable. The manager told him that he would not be served and that should leave the bank. Aff. ¶ 15-16.

15. Fleet's check cashing identification policy requires the type of identification, numbers (except for credit cards) and expiration date to be noted on the front, top portion of the check. (Martin Affidavit, ¶4 and Exhibit B thereto, at page 3 of 8) [Kamm Aff., Ex. 4]. If a credit card is used as a form of identification, the type of credit card and expiration date

6

are to be recorded on the check and the credit card number must be written on the journal tape that records the transaction. (Id.) As Ms. Martin attests, there is no credit card type and expiration date recorded on the check plaintiff cashed, nor is there a credit card number written on the journal tape. The check plaintiff cashed in this case has only one form of identification noted on the front of the check, which is plaintiff's driver's license number. (Id., ¶4 and Exhibit A thereto) [Kamm Aff., Ex. 4]. See also Deposition of Jay Odunukwe dated August 5, 2004, at 22-23 and Dep. Ex. 1; id. at 45-46 and Dep. Ex. 2 (identifying the check he cashed and the deposit he made at the Medfield branch) [Kamm Aff., Ex. 1].

**RESPONSE:** He asked the manager why his identification cards are unacceptable and she simply told him to leave. He informed her that he will not leave since he presented valid identification cards as required by law. He again requested to be served. Aff. ¶17-19. The manager then told him to leave the bank and that he will be forcibly evicted if he did not leave. He did not move. Aff. ¶18-19. While all this was taking place, there was a long line of customers in the bank. He felt totally humiliated, embarrassed, disgraced. He was made to feel totally worthless. Aff. ¶19, 32.

16. The manager then took the check and his identification cards and placed them on a vacant teller window and told him to step away from the teller window and that she will talk to him as soon as she finishes what she was doing. Aff. ¶ 21. He stepped away from the teller window and went to the side. A few moments later the manager called him into her office. Aff. ¶22. Inside her office, she went to her desk, sat down, picked up the phone and made a quick phone call and then dropped the phone. Aff. ¶23. She gave him back his check and identification cards and said that he will not be served and that he must

7

leave the bank and should he refuse to leave that he will be forcibly removed. Id. 24. He again asked for an explanation to figure out what is going on and the manager simply stated that his identification cards were inadequate. Id. 25.

17. He told her that what the bank had done to him is wrong, unfair and illegal. He told her that he was totally humiliated and disgraced in front of a lot of people for no reason. He told her that it is very obvious that he was the only black customer in the bank and that they have succeeded in discriminating against him. He told her that he will file a complaint against the bank with Fleet Bank Management for the discriminatory practice. Id. 25-27.

18. He then left the bank. He was totally distraught and in shock as he left the bank and headed to his car. Upon regaining his composure, he drove to another Fleet Bank located in Medfield Massachusetts about two miles away. At the Medfield Fleet bank, he presented the same Massachusetts driver's license, American Express credit card and check, only this time to the Afro-American teller. The teller cashed his check after reviewing his identification cards. Id. 33-35. He was disgraced and humiliated; he was made to feel worthless. He felt completely inadequate and useless. The treatment and humiliation he received at the Medway Fleet bank caused him much pain, anguish and distress resulting in anxiety, weight loss and sleeplessness. It was a life changing experience and it has a tremendous negative impact on his life. Id. 35-44.

19. Plaintiff exhausted his administrative remedies and the MCAD entered a finding of probable cause after exhaustive investigation to credit his claim of discrimination against the defendant. See Ex. 1.

                                                                           Respectfully submitted,

                                                                           Jay Odunukwe, Esq.,
                                                                           By his attorney,

Date: June 14, 2006                             /s/ Robert O. Berger
                                                                          Robert O. Berger (BBO#: 038900)
                                                                           11 Beacon Street, Suite 1210
                                                                           Boston, MA 02108
                                                                           (617) 423-7575

## **CERTIFICATE OF SERVICE**

     I hereby certify that a true and exact copy of the above document was served upon the attorney of record for each other party by electronic transfer.

Date: June 14, 2006                             /s/ Robert O. Berger
                                                                          Robert O. Berger (BBO#: 038900)

# Exhibit 1

MCAD Investigation Fact Sheet

**COMMISSION AGAINST DISCRIMINATION**
One Ashburton Place, Boston, MA 02108
(617) 994-6000 Fax: (617) 994-6024
**INVESTIGAITON FACT SHEET**

| To: | Jay Odunukwe | From: | Mass Commission Against Discrimination |
|---|---|---|---|
| | 9 Fieldmont Street. | | One Ashburton Place, Room 601 |
| | Hyde Park, MA 02136 | | Boston, MA 02108 |
| Case: Jay Odunukwe v. FleetBank | | Docket No: 021402452 | |
| Investigator: Marzella B. Hightower | | EEOC No: None | |

Investigation Summary:
Whether the Complainant was discriminated against in a place of public accommodation in being denied service. On May 14, 2002, Complainant went to the Respondent's Medway Branch to cash a check for $1,100.00 (one thousand and one hundred dollars). Complainant was a non-customer with a check drawn on Fleet account held by the Complainant's relative. Complainant alleges he presented two (2) forms of identification, a driver's license and valid American Express credit card, but the Respondent rejected both forms of identifications; he then presented his Suffolk University identification card and was told that the student identification card was only good at the University and that it had expired. He believes he was denied because of his race/color (Black) in violation of M.G.L. 272, Section 98. The Respondent asserted Complainant failed to provide proper identification accordance to the Respondent's check cashing policy.

Investigation revealed:
Investigation revealed Respondent's policy states that two forms of acceptable identification, one of which a photo identification is required when the check is greater than $500.00 (five hundred dollars). Another is a major credit card, such as American Express. The investigation revealed that upon being denied by the teller, the Complainant requested to see the manager. The manager spoke to the Complainant in her office and made a telephone call to the customer of the account. The manager was unable to communicate with the account holder at home or work.

Investigation further revealed that the Complainant immediately went to another Fleet Bank located in Medfield and was able to cash the check with his Massachusetts driver's license and his American Express card with out incident.

Conclusion:
Based on the foregoing findings, one could form the reasonable belief that the Respondent discriminated against the Complainant by denying him services because of his race/color. Genuine issues of material fact are present which are reserved for public hearing. Therefore, a finds of probable cause is warranted.

Disposition:
Therefore, pursuant to Section 5 of Chapter 151B, of the Massachusetts General Laws, and in conformity with the foregoing Findings of Facts, I have this day found that probable cause exists for crediting the allegations of the subject complaint. Pursuant to said Section 5, the parties will be

- 2 -

afforded an opportunity to participate in a conciliation conference at the offices of the Commission. If the [arties do not choose to participate, or if such conferences does not result in an informal resolution of this matter, the case will be certified for public hearing and final disposition on this matter will be rendered by the designated Hearing Commissioner.

Marzella B. Hightower
Investigator

Jean A. Clanton
Supervisor

Walter J. Sullivan, Jr.
Investigating Commissioner