UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

CIVIL NO. 1:05-CV-10324

JAY ODUNUKWE, ESQ.    )
    PLAINTIFF         )
                             )
V.                    )
                             )
FLEET BANK BOSTON,    )
    DEFENDANT         )
                             )

## **Affidavit of Plaintiff**

Then appeared the plaintiff and swore and affirmed as follows:

1. I am the Plaintiff in the above-entitled complaint.

2. I am an African-American male.

3. I have a bachelors of Science Degree in Accounting and a Law degree and a member of the Massachusetts bar in good standing since 2002.

4. On May 14, 2002, I was at the Medway Fleet bank located at 108 Main Street in Medway Massachusetts to cash a check and make a deposit.

5. I had been at this bank location several times in the past for ATM transactions without any incident. I had been a Fleet Bank customer for many years before I moved to another bank.

6. When I entered the bank at approximately 11:45 AM on May 14, 2002, the bank was open for business and there were several people in line.

7. I joined the line of customers and after approximately ten minutes of waiting in line, I got to a teller window, I presented to the teller my check for $1,100 drawn on Fleet bank, made out in my name and

already endorsed by me. I also presented my Massachusetts driver's license and my American Express credit card to the teller.

8. The teller took the check and my identification cards, glanced at them and pushed them back to me saying they are inadequate and that I will not be served. I asked her what constitutes adequate identification and she said; a government issued identification with a picture or a passport and a major credit card.

9. I told the teller that my Massachusetts driver's license qualified as a government issued identification and the American Express credit card a major credit card.

10. The teller then raising her voice told me that that I should leave, she will not serve me.

11. I told her that I will not leave since I had valid and proper identification cards. She still refused to attend to me.

12. I reached into my wallet and produced a <u>third</u> identification; my Suffolk university alumni identification with my picture on it.

13. The teller looked at Suffolk Identification and said that it is not acceptable and only good at Suffolk University and had expired. She told me again to leave.

14. Totally surprised, frustrated and embarrassed, I requested to speak to the Manager. She went and called someone else who I suppose was the manager.

15. The manager came over to this teller's window, my identification cards and check was still on the counter. The manager glanced at my check and my identification cards, stared at the teller, said something to her and then pushed the check and my Massachusetts driver's license, American Express credit card and Suffolk University card back to me and said that they are unacceptable.

16. The manager told me that they will not cash the check and that I should leave the bank.

17. I asked the manager why my identification cards are unacceptable and she simply told me to leave. I informed her that I will not leave since I presented valid identification cards as required by law. I did not leave.

18. The manager again told me to leave the bank and threatened me with forcible eviction if I did not leave.

19. While all this was taking place, there was a long line of customers in the bank. I felt totally humiliated, embarrassed and disgraced.

20. I stood there and did not move.

21. The manager then again took the check and my identification cards and placed them on a vacant teller window and told me to step away from the teller window.

22. I stepped away from the teller window and went to the side. A few moments later the manager called me into her office.

23. Inside her office, she went to her desk, sat down, picked up the phone and made a quick phone call and then dropped the phone.

24. She gave me back my check and identification cards and said that I must leave the bank. If I refuse to leave I will be removed by force.

25. I again asked for an explanation to figure out what is going on but the manager was only interested in me leaving her bank. I asked how it is possible that my driver's license and American Express credit card were inadequate when that is all that is required by law.

26. I told her that what the bank had done to me was wrong, unfair and illegal. I told her that I was totally humiliated and disgraced in front of a lot of people for no reason. I told her that I am the only black customer in the bank and that what they are doing to me is illegal.

27. Before I left I informed her that I will lodge a complaint against the bank with Fleet Bank Management.

28. Nobody else in the bank was subjected to the same treatment while I was in the bank on May 14, 2002.

29. She ordered me to leave her office and the bank. I got up and left.

30. While all this was taking place, there was a white uniformed police officer customer who was in the bank for a transaction. We actually came in at the same time. I was behind him in line.

31. He finished his transaction and hung around until I left the bank. He followed behind me as I left the bank.

32. I was totally distraught and in shock as I walked away. I went to my car and sat there for some time. Upon regaining my composure, I drove to another Fleet Bank located in Medfield Massachusetts about two miles away.

33. At the Medfield Fleet bank, I presented the same check, the same Massachusetts driver's license, the same American Express credit card to the teller. The teller cashed my check without any incident.

34. I also made a deposit at this branch after I cashed my check.

35. My experience at the Medway Fleet bank was horrific and a total disgrace. I was humiliated and subjected to ridicule and discrimination for no justifiable reason. I was made to feel worthless.

36. There was no lawful justification whatsoever for the inhuman and discriminatory treatment I was subjected to and received at Fleet bank in Medfield, Massachusetts on May 14, 2002.

37. When I got home, I told family members, relatives and some friends my experience at the Medfield Fleet bank.

38. I called Fleet Bank toll free customer service number to report the incident. I was informed by the customer service representative who answered the phone that I should write my complaint and mail it to Fleet customer service department in Pennsylvania.

39. I wrote a detailed strong complaint to Fleet Customer Service and requested an investigation and an apology.

40. I went ahead and filed a complaint with the Massachusetts Commission Against Discrimination (MCAD) when Fleet Bank Management failed to address the issues I raised in my complaint after several months.

41. The bank instead of investigating my complaint and addressing the issues raised there have instead resorted to outright denials, character assassination, total fabrications and lies to discredit and cover-up the incident at the Medway Fleet bank on May 14, 2002.

42. The bank still has refused to produce the video surveillance tapes from this Medway Fleet bank. The tapes were available after the incident and now the bank's lawyers are claiming the tapes are no longer available. These are tapes that could back up what happened to me at that bank on May 14, 2002.

43. After eighteen (18) months investigation, the MCAD credited my complaint and found probable cause that Fleet Bank discriminated against me based on my race on May 14, 2002 in Medway Massachusetts.

44. The treatment and humiliation I received at the bank caused me so much pain, anguish and distress to say the least. It was a life changing experience and a tremendous negative impact on my life including sleep loss, anxiety, emotional distress and distrust of people.

Signed under the pains and penalties of perjury.

JAY ODUNUKWE

June 1, 2006

# __Exhibit 1__

MCAD Investigation Fact Sheet

COMMISSION AGAINST DISCRIMINATION
One Ashburton Place, Boston, MA 02108
(617) 994-6000 Fax: (617) 994-6024
INVESTIGAITON FACT SHEET

| To: | Jay Odunukwe
9 Fieldmont Street.
Hyde Park, MA 02136 | From: | Mass Commission Against Discrimination
One Ashburton Place, Room 601
Boston, MA 02108 |
|---|---|---|---|
| Case: Jay Odunukwe v. FleetBank | | Docket No: 021402452 | |
| Investigator: Marzella B. Hightower | | EEOC No: None | |

Investigation Summary:
Whether the Complainant was discriminated against in a place of public accommodation in being denied service. On May 14, 2002, Complainant went to the Respondent's Medway Branch to cash a check for $1,100.00 (one thousand and one hundred dollars). Complainant was a non-customer with a check drawn on Fleet account held by the Complainant's relative. Complainant alleges he presented two (2) forms of identification, a driver's license and valid American Express credit card, but the Respondent rejected both forms of identifications; he then presented his Suffolk University identification card and was told that the student identification card was only good at the University and that it had expired. He believes he was denied because of his race/color (Black) in violation of M.G.L. 272, Section 98. The Respondent asserted Complainant failed to provide proper identification accordance to the Respondent's check cashing policy.

Investigation revealed:
Investigation revealed Respondent's policy states that two forms of acceptable identification, one of which a photo identification is required when the check is greater than $500.00 (five hundred dollars). Another is a major credit card, such as American Express. The investigation revealed that upon being denied by the teller, the Complainant requested to see the manager. The manager spoke to the Complainant in her office and made a telephone call to the customer of the account. The manager was unable to communicate with the account holder at home or work.

Investigation further revealed that the Complainant immediately went to another Fleet Bank located in Medfield and was able to cash the check with his Massachusetts driver's license and his American Express card with out incident.

Conclusion:
Based on the foregoing findings, one could form the reasonable belief that the Respondent discriminated against the Complainant by denying him services because of his race/color. Genuine issues of material fact are present which are reserved for public hearing. Therefore, a finds of probable cause is warranted.

Disposition:
Therefore, pursuant to Section 5 of Chapter 151B, of the Massachusetts General Laws, and in conformity with the foregoing Findings of Facts, I have this day found that probable cause exists for crediting the allegations of the subject complaint. Pursuant to said Section 5, the parties will be

- 2 -

afforded an opportunity to participate in a conciliation conference at the offices of the Commission. If the [arties do not choose to participate, or if such conferences does not result in an informal resolution of this matter, the case will be certified for public hearing and final disposition on this matter will be rendered by the designated Hearing Commissioner.

| | | |
|---|---|---|
| Marzella B. Hightower | Jean A. Clanton   *(mB)* | Walter J. Sullivan, Jr. |
| Investigator | Supervisor | Investigating Commissioner |