UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

Civil Action No. 1:05-cv-10324NMG

```
_____
                                )
JAY ODUNUKWE, ESQ.              )
                    Plaintiff,  )
                                )
        v.                      )
                                )
BANK OF AMERICA                 )
                    Defendant.  )
_____)
```

### JOINT PRE-TRIAL MEMORANDUM

**A.**    **Summary of the Evidence**

Plaintiff's Statement

The theme of this is simple: one branch of a bank cashed the check, and the other would not. Apparently that was because of racial profiling. The branch had a black teller.

The customer was black.

Plaintiff is an American citizen of African descent and is black. On May 14, 2002, plaintiff entered the Medway Fleet bank located at 108 Main Street in Medway, Massachusetts ("Medway Fleet branch") to cash a check The plaintiff and his sister, Joy I. Odunukwe,  both are African-American professionals. Joy has a doctorate in pharmacy. Jay has a doctorate in law and is a Boston attorney. Jay had been at the bank location where the incident occurred several times in the past and had been a Fleet customer for many years before moving to another bank.  Joy had issued a check on her Fleet account to her brother, and had asked her brother to cash a check on her Fleet account at the time of the incident.  Plaintiff presented a check for $1100.00 to Medway teller Marybeth

McHardy to be cashed. He presented a Massachusetts driver's license and an American Express card to Ms. McHardy. Ms. McHardy looked at this identification and told him that he did not have proper identification and could not cash his check. He asked her what constitutes adequate identification and she said; a government issued identification with a picture or a passport and a major credit card. He told her that his Massachusetts driver's license qualified as a government issued identification and the American Express credit card is a major credit card. She then repeated in a raised, firm voice that she could not serve him. Plaintiff then asked to speak with Ms. McHardy's manager. Ms. McHardy left the teller window briefly and returned with the branch manager, Jean Brennan.. Plaintiff then asked to speak with Ms. McHardy's manager. Ms. McHardy left the teller window briefly and returned with the branch manager, Jean Brennan. Ms. Brennan looked at plaintiff's identification and told him that he did not have proper identification and had to leave.

After Ms. Brennan hung up the phone, plaintiff claims that she told him that she could not cash the check and that he had to leave the bank or they would forcibly remove him.

The problem with all this is simple; one branch of Fleet cashed the check and the other would not, and that apparently was because of racial profiling.

After leaving the Medway Fleet branch, plaintiff went to the Fleet branch in Medfield, Massachusetts ("Medfield Fleet branch") and a black teller cashed the check. The teller cashed his check after reviewing his identification cards. Id. 33-35. He was disgraced and humiliated; he was made to feel worthless. He felt completely inadequate and useless. The treatment and humiliation he received at the Medway Fleet bank caused

him much pain, anguish and distress resulting in anxiety, weight loss and sleeplessness. It

was a life changing experience and it has a tremendous negative impact on his life.  Id.

35-44.  Plaintiff exhausted his administrative remedies and the MCAD entered a finding

of probable cause after exhaustive investigation to credit his claim of discrimination

against the defendant. See Ex. 1.


Defendant's Statement

On May 14, 2002, Jay Odunukwe entered the branch of Fleet National Bank located in

Medway, Massachusetts.  Mr. Odunukwe was not a customer, but he came to the bank to cash a

check in the amount of $1,100 drawn on the account of Fleet customer Joy Odunukwe.  Mr.

Odunukwe presented teller Marybeth McHardy, now Marybeth Nance, with the check and two

forms of identification.  Ms. McHardy told him that she could not cash his check, because the

Fleet check cashing policy requires a non-customer to present two approved forms of

identification, and he had presented only one approved form of identification.  Mr. Odunukwe

became upset and asked to speak with the manager.  Mr. Odunukwe spoke with the branch

manager, Jean Brennan, who also told him that the bank could not cash his check because he did

not have two approved forms of identification.  Ms. Brennan offered to try to contact the maker

of the check, Joy Odunukwe.  She told Mr. Odunukwe that she would cash the check with only

one approved form of identification if Ms. Odunukwe confirmed that she had given the check to

him.  Mr. Odunukwe went with Ms. Brennan into her office and Ms. Brennan attempted to

contact Ms. Odunukwe but was not able to reach her at either the home number or the office

number listed in the bank's computer system.   As a result, Ms. Brennan told Mr. Odunukwe that

she was unable to cash his check.  At no time did anyone at the Medway branch make any comment or reference to Mr. Odunukwe's race or color.

Ms. McHardy and Ms. Brennan did not discriminate against Mr. Odunukwe based on his race.  In refusing to cash Mr. Odunukwe's check, Ms. McHardy and Ms. Brennan were doing nothing more than applying Fleet's check-cashing policy as it was consistently applied in that branch.  Ms. Brennan would have made an exception to the check cashing policy if Ms. Brennan had been able to speak with Ms. Odunukwe to confirm she had given Mr. Odunukwe the check. If the Medway branch had made an exception to the check cashing policy that resulted in a loss to the bank, however, the Medway branch would have been responsible for the loss.  Moreover, the employee who approved the exception (who would have been Ms. Brennan, in this case) may have been subjected to disciplinary action as a result.

Mr. Odunukwe then went to the Fleet branch in Medfield, Massachusetts.  The Medfield branch made an exception to the check-cashing policy, even though Mr. Odunukwe did not present two approved forms of identification.  Fleet policy requires the teller to record the type of identification and corresponding numbers and expiration date on the front of the check before cashing the check.  If a credit card is used as identification, the policy requires the teller to write the type of credit card and the expiration date on the front of the check, and to write the credit card number on the journal tape that records the transaction.  The teller who cashed the check, Orfalina El-Alam, recorded only a Massachusetts driver's license on the front of the check. There is no credit card type or expiration date recorded on the check, and there is no credit card number recorded on the journal tape.  The Medfield branch applied the check cashing policy differently than the Medway branch and cashed the check with only one approved form of identification.

Plaintiff has no evidence to support that he is entitled to any damages.  He has testified that he was upset by the incident at the Medway branch but sought no medical or psychiatric treatment as a result.  To Fleet's knowledge, he has no actual damages, in terms of lost wages or out-of-pocket expenses, resulting from this incident.

**B.    Established Facts**

1.    Plaintiff is from Nigeria.

2.    The Defendant, Bank of America, N.A., formerly Fleet National Bank is a national banking association organized under the laws of the United States.

3.    Mr. Odunukwe entered the branch of Fleet National Bank located in Medway, Massachusetts on May 14, 2002 and presented a check for cashing in the amount of $1,100 written on the account of Joy Odunukwe.

4.    The check was not cashed by the Medway Fleet branch.

5.    The check was cashed at the Medfield Fleet branch.

**C.    Contested Issues of Fact**

Plaintiff:

1.    Did the defendant deprive the plaintiff of his rights in providing inconsistent services to a black customer?
2.    Did the defendant under these circumstances act so as to incur punishment for its misconduct?

Defendant:

1.    The number and types of identification that Mr. Odunukwe presented to the Medway branch on May 14, 2002.

2.    The number and types of identification that Mr. Odunukwe presented at the Medfield branch on May 14, 2002.

3.      Whether Mr. Odunukwe has proved by a preponderance of the evidence that he was discriminated against on the basis of his race when the Medway branch did not cash his check on May 14, 2002.

**D.      Jurisdictional Questions**

Plaintiff: None.

Defendant:      None.

**E.      Questions Raised by Pending Motions**

There are no pending motions.  Bank of America expects to file motions in limine regarding some or all of the issues set forth in section F below.

**F.      Issues of Law**

1.      Whether plaintiff should be precluded from introducing testimony regarding punitive damages, including but not limited to testimony regarding the net worth of Bank of America, from arguing that plaintiff is entitled to punitive damages, and from having the jury instructed as to punitive damages**.**

Plaintiff relies on *Cooper Industries v. Leaterman Tools,* 532 U.S. 424 (2001) and *TXO v. Alliance*, 509 U.S. 443 (2003) as supportive authority for punitive damages, where in this racial profiling case a black attorney is treated manifestly differently and subjected to groveling humiliation at one branch of a bank and completely differently at another branch of the same bank by a black teller the same day! This case is a classic one for punitive damage. See *Rowlett v. Anhauser-Busch*, 832 F. 2d 194, 206 (1st Cir. 1987) (punitive damages in a section 1981 case of race discrimination).  See, e.g., Cass Sustein, et al., *Punitive Damages: How Juries Decide* (Chicago, 2002).

Defendant relies on *Danco v. Wal-Mart*, 178 F.3d 8 (1st Cir. 1999), *Kolstad v. American Dental Association*, 527 U.S. 526 (1999), *Smith v. Wade,* 461 U.S. 30 (1983), *Bowen v. W.R. Grace*, 781 F. Supp. 682 (D. Mont. 1991), and *Smith v. Bell Atlantic,* 63 Mass. App. Ct. 702 (2005), among other authorities, for its position that Bank of America cannot be held liable for punitive damages for the acts of its predecessor corporation; that Bank of America cannot be held liable for an alleged isolated act of discrimination of ordinary, low-level employees without evidence that Bank of America's management engaged in racial discrimination by evil motive or intent or behaved in a manner that showed reckless or callous indifference to such discrimination; and, even if the actions of management are implicated, Bank of America cannot be responsible for punitive damages when there is no evidence that the manager was motivated by racist attitudes or demonstrated the "high degree of culpability" required for an award of punitive damages, and where Bank of America has made good-faith efforts to prevent discrimination in the workplace and toward its customers.

2.     Whether the court should preclude the admission of the probable cause finding of the Massachusetts Commission Against Discrimination and any testimony regarding the probable cause finding.

Plaintiff simply argues that it is more probative than prejudicial. See Fed. R. Ev. 403.

Defendant relies on *Patten v. Wal-Mart Stoes East, Inc.*, 300 F.3d 21 (1st Cir. 2002) in support of its position that testimony and the admission of the MCAD finding should be precluded under Rule 403 because its admission would be more prejudicial than probative.

3.     Whether plaintiff should be precluded from testifying regarding the existence or nonexistence and production/nonproduction of security video tapes from the Medway branch.

Plaintiff relies on Fed. R. Evid. 1004 and the chain of evidence problems of non-production of an existent, lost or destroyed piece of evidence and spoliation issues.

Defendant states that Fed. Rule of Evidence 1004 is inapplicable and relies on *Commercial Insurance Company of Newark, New Jersey*, 512 F.2d 1307 (1st Cir. 1975) to support its position that evidence regarding the existence or nonexistence and production or nonproduction of security video tapes is inadmissible, and that no adverse inference can be drawn, where plaintiff never requested copies of the tapes through Federal Rule of Civil Procedure 34 and will not be able to present any evidence that the tapes are available and have not been produced.

4.      Whether plaintiff should be precluded from testifying regarding any alleged exacerbation of his ulcers as plaintiff has produced no medical records regarding this condition and must present expert testimony in order to recover this type of damage.

Defendant states that plaintiff's statement of the evidence does not assert this element of damage, and therefore the Court may not need to address this issue.  However, to the extent plaintiff intends to testify that the alleged discrimination exacerbated his ulcers, defendant relies on *Smith v. Bell Atlantic*, 63 Mass. App. Ct. 702 (2005) and other authorities for its position that expert testimony is required to show that the alleged discrimination caused the exacerbation of this condition.

**G.      Requested Amendments to the Pleadings**

Plaintiff: None

Defendant:      None.

**H.      Additional Matters to Aid in the Disposition of the Action**

Plaintiff: None.

<u>Defendant</u>:    None

## I.    **Estimated Length of Trial**

The defendant estimates that the trial of this case may take three to four half days. The plaintiff says two.

## J.    **Witnesses:**

<u>Plaintiff: The same as the defendant, except for Joy Odunkwe and Keeper of the Record.</u>

<u>Defendant</u>

1.    Jay Odunukwe
      10 Kristin Court
      Hyde Park, MA

2.    Marybeth Nance (formerly Marybeth McHardy)
      c/o Bank of America Premier Banking
      9000 Southside Blvd
      Jacksonville, Florida
      (904) 665-9530

3.    Jean Brennan
      9 George Street
      Mendon, MA 01756
      (508) 478-2160

4.    Pamela Martin
      c/o Bank of America
      478 Main St.
      Medfield , MA 02052
      (508) 359-6703

5.    Orfalina El-Alam
      11 Grandfield Avenue
      Roslindale, MA  02131
      (617) 327-8616

6.    Paula Curtis
      c/o Bank of America
      108 Main Street
      Medway, MA 02053
      (508) 533-6741

7.      Linda Tissot
        c/o Bank of America
        478 Main St.
        Medfield , MA 02052
        (508) 359-6703

8.      One or more representatives of Fleet National Bank/Bank of America to testify
regarding bank records and bank policies, including but not limited to bank check cashing
policies and performance standards for platform and teller employees regarding
compliance with policies and procedures.

9.      Keeper of Records for American Express


In addition, Bank of America may call the following witnesses if the need arises:

1.      One or more representatives of Bank of America, N.A. to testify regarding Bank
of America's policies, practices and programs regarding diversity, equal treatment,
nondiscrimination, community banking, and minority hiring.

2.      Robert Driscoll
        c/o Bank of America
        100 Federal Street
        Boston, MA  02110

3.      Lt. Tingley
        Medway Police Department
        315 Village St.
        Medway, Ma 02035
        508-533-3212


The defendant reserves the right to seasonably supplement this list of witnesses.

**K.      Proposed Exhibits**

Plaintiff

Defendant

1.      Copy of Check #1971 dated May 14, 2002 for $1100.00 drawn on account of Fleet
        customer Joy L. Odunukwe and made payable to Udoka Jay Odunukwe ("Fleet check")

2.      Copy of Check #27498 dated May 7, 2002 for $1,333.00 drawn on account of Healthcare
        Consultants Pharmacy Staffing and made payable to Chinwe Enemchukwu ("Deposit
        Check")

3.    Copy of deposit slip for Deposit Check

4.    Copy of Journal Tape documenting transactions in which Fleet check was cashed and Deposit Check was deposited on May 14, 2002 at Medfield Fleet branch

5.    Copy of Check cashing policies of Fleet National Bank in effect in May 2002

6.    Copy of Fleet National Bank Performance Standards for Platform and Teller Employees regarding Compliance with Policies and Procedures

7.    American Express documents relating to plaintiff's American Express card

In addition, Bank of America may offer the following documents as exhibits if the need arises:

8.    Affidavit of Marybeth McHardy

9.    Affidavit of Jean Brennan

10.   Affidavit of Pamela Martin

The defendant reserves the right to seasonably supplement this list of exhibits.

**L.    Parties' Respective Positions on any Remaining Objections to the Evidence Identified in the Pretrial Disclosure Required by Fed.R.Civ.P. 26(a)(3).**

Plaintiff

Defendant

1.    The defendant objects to the admission of "plaintiff's letter to defendant of May 11, 2003," as this letter has never been produced to Bank of America.

2.    The defendant objects to the admission of any testimony regarding punitive damages, including but not limited to testimony or documents regarding the net worth of Bank of America.

**J.    Certification**

The undersigned each certified that he has apprised his respective client of estimated litigation costs.

11

Respectfully submitted,

Plaintiff                                                                    Defendant
JAY ODUNUKWE                                       BANK OF AMERICA, N.A. (erroneously
By his attorneys,                                                  named Bank of America)
                                                                          By its attorneys,


_____/s/ Robert O. Berger_____                ___/s/ Carol E. Kamm_____
Robert O. Berger, BBO #038900            Donn A. Randall, BBO No. 631590
11 Beacon Street, Suite 1210                 Carol E. Kamm, BBO No. 559252
Boston, MA  02108                                 Bulkley, Richardson and Gelinas, LLP
Phone: (617) 423-7575                           One Post Office Square, Suite 3700
Fax:  (617) 275-8000                              Boston, MA  02109
                                                            Phone: (617) 368-2500
                                                            Fax: (617) 368-2525


Dated:  November 20, 2006



<u>Certificate of Service</u>

    I hereby certify that a true copy of the above document was served electronically upon the attorney of record for each party on November 20, 2006.

                                    /s/ Carol E. Kamm_____
                                    Carol E. Kamm