UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

CIVIL NO. 1:05-CV-10324

| JAY ODUNUKWE, ESQ. | ) |
| PLAINTIFF | ) |
| | ) |
| V. | ) |
| | ) |
| BANK OF AMERICA, | ) |
| DEFENDANT | ) |

**OPPOSITION TO MOTIONS IN LIMINE IN REGARD TO PUNITIVE DAMAGES**

The defendant, Bank of America, filed two motions in limine, one of which involves the issue of punitive damages, and the other of which is in connection with the admissibility of evidence generated by the Massachusetts Commission Against Discrimination. Both clearly are untimely because the topics of damages and relevance can only be resolved in the trial during the flaming crucible of litigation combat, and this motion is before the trial. Obviously, only at the trial (and not in this pretrial stage), all of the evidence can be tested in the context of the admissibility of punitive damages evidence and the admissibility of the written evidence.

**I. THE ADMINISTRATIVE DOCUMENT IS NOT INADMISSABLE.**

As the court well knows, this case has been litigated administratively in the Equal Employment Opportunity Commission (EEOC) and the Massachusetts Commission against Discrimination (MCAD) with discovery and a rare finding of probable cause for the plaintiff. The defendant appears to object to one piece of evidence of the MCAD. The first motion in limine involving a portion of an administrative record of the Commission should be denied. The analysis is based on Federal Rules 401-415, which spell out relevancy analysis, and exceptions

for public policy. Nothing under the Rules would support the exclusion of the evidence. Any findings of the MCAD and EEOC have independent probative value of the defendant's conduct, showing material facts that are more probative than non-probative, and thus are "relevant." See Fed. R. Evid. 401 and 402. In addition, such evidence is more probative of conduct by the parties than prejudicial, confusing, or misleading, at least at this stage of the proceedings. See Fed. R. Evid. 403. In other words, there is no real showing that the administrative evidence is than prejudicial, confusing, or misleading. This is not evidence of character, habit, compromise, payment of medical bills, insurance, or sex crimes. Thus, it does not now (at this stage of the case) appear that such evidence must be barred, again at this point.

### EVIDENCE OF PUNITIVE DAMAGES IS NOT INADMISSABLE.

With respect to the level of conduct giving rise to punitive damages that could be introduced for the trial, the motion is premature because the trial has not occurred. It would require practiced obtuseness not to understand the nature of the highly offensive discriminatory offenses charged. Indeed, when read as a whole, fairly athletic word-chopping is necessary to read the absence of a recognizable claim for punitive damages-- at least, again it must at the risk of sounding like a dim chime to repeat and repeat ad nauseum, at this stage of the proceedings.

The facts are precise and set forth clearly in the two summary judgment attempts that failed. The plaintiff is an American citizen, who is of African decent and black, and a member of the bar of Massachusetts. To the litigants and judge the facts are familiar, and the plaintiff cannot as a matter of law be gainsaid that they are not outrageous. On or about May 14, 2002, Jay Odunukwe drove to the Medway Fleet bank, located at 108 Main Street in Medway Massachusetts, to make a bank transaction. When he entered the bank at approximately 11:45 a.m., the bank was open for business. Plaintiff joined the line of customers waiting to transact

business with the bank. When he reached the teller window, he presented a check for $1,100.00, drawn on Fleet bank, made out in his name and endorsed by him. He also presented a valid Massachusetts driver's license and a valid American Express credit card. The teller took the check and his identification cards; looked at them and pushed them back to him and declined to serve him (cash his check). The teller told Mr. Odunukwe his identifications were not acceptable. Odunukwe asked the teller exactly what constituted acceptable identification. She replied that a government issued identification with a picture or a passport and a major credit card. He told her that his Massachusetts driver's license qualified as a government issued identification and the American Express credit card was a major credit card. The teller, raising her voice, told him she would not accept his identification cards and that he should leave because he would not be served. Mr. Odunukwe who was the only black person in the bank the whole time he was there refused to leave. The teller still refused to cash his check.

Odunukwe reached for his wallet to produce a third identification card; his Suffolk University alumni identification with his picture on it. The teller rejected this third means of identification. She told him, again in a loud voice, to leave. Odunukwe then requested to see the Manager. The Manager came over to the teller's window, took a quick glance at his check and his identification cards, said something to the teller, and then pushed the check and his Massachusetts driver's license, American Express credit card and Suffolk University identifications back to him. The manager told him to leave. He then asked the manager why his identification cards were unacceptable and the manager simply told him to leave. Odunukwe informed the manager that he would not leave since he presented valid identification cards as required by the law. He again requested to be served. The manager told him that he would be forcefully evicted if he did not leave. Odunukwe did not leave.

3

The manager then took the check and his identification cards and told him to step aside from the teller window. Mr. Odunukwe stepped away from the teller window and went to the side. The manager then later called him into her office. She then made a quick phone call and then dropped the phone. She gave the check and identification cards back to him and told him that he would not be served and that he must leave the bank and should he refuse, he would be forcefully removed. Odunukwe then asked for an explanation to figure out what is going on and the manager stated that he would not be served and that he should leave the bank or he would be removed. He then told her that what they were doing to him was wrong, unfair and illegal. He told her that he would file a complaint against the bank with Fleet Bank Management for the discriminatory practice. Odunukwe in shock and dismay left the bank. Plaintiff then went to another Fleet bank, located in Medfield Massachusetts, approximately two miles away. At the Medfield Fleet bank, he presented the same Massachusetts driver's license, American Express credit card and check to the teller. The teller (a black woman) cashed his check after reviewing his identification cards. Plaintiff exhausted his administrative remedies and the MCAD entered a finding of probable cause to credit his claim of discrimination against the defendant.

In sum, were the jury to credit Mr. Odunukwe's testimony that he presented two valid forms of identification and a valid check as required by law and the bank still refused to serve him and evicted him could clearly been seen as evidence of bad motive or wanton indifference and a callous indifference to a federally protected right. Arguably, a jury could find defendant either knew that its actions violated federal law or acted with reckless or callous indifference to that risk. The jury could award punitive damages where defendant's culpability is so reprehensible as to warrant further sanctions to achieve punishment or deterrence. See *State Farm Mutual Auto Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003). Punitive damages are

available here[1]. *Iacobucci v. Boulter*, 193 F.3d 14, 25-26 & n.7 (1st Cir. 1999) (Section 1983) (holding case law decided under section 1981a applicable to section 1983 punitive damages awards); *McKinnon v. Kwong Wah Rest.*, 83 F.3d 498, 507 (1st Cir. 1996) (Title VII) ("[Section 1981a] permits courts to award damages in cases of intentional discrimination . . . in the same circumstances as such awards are permitted under 42 U.S.C. § 1981 for race discrimination.").

In *Pacific Mutual Life Insurance Co. v. Haslip*, 499 U.S. 1, 23 n.11 (1991), the Supreme Court declined to impose the clear and convincing evidence standard on state punitive damages so that the state law claim clearly goes forward for punitive damages. Arguably, a jury could find on this record evidence of something like clear and convincing evidence, or perhaps less than that, but the reality is that there is enough to deny a motion in limine.

Obviously, "the inquiry should focus on the acting party's state of mind." *Romano v. U-Haul Int'l*, 233 F.3d 655, 669 (1st Cir. 2000.) The Supreme Court and the First Circuit have both stated that Congress modeled the punitive damages language of section 1981a on the language used in *Smith v. Wade*, 461 U.S. 30 (1983) (Section 1983). See *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 535-36 (1999) (Title VII); *Iacobucci v. Boulter*, 193 F.3d 14, 26 n.7 (1st Cir. 1999) (Section 1983); see also *McKinnon v. Kwong Wah Rest.*, 83 F.3d 498, 507 (1st Cir. 1996) (Title VII) ("The legislative history of the Section notes: Plaintiffs must . . . establish[] that the employer acted with malice or reckless or callous indifference to their rights . . . to recover punitive damages.")There is no indication in the language of any of these opinions that the use or omission of the word "callous" was conscious or significant. Instead, the courts all emphasize the importance of finding that the defendant acted in disregard of a "subjective consciousness" of the

---

[1] The Supreme Court in *Phillip Morris, USA v. Williams*, ___ U.S. ___, (2007) recently dealt with punitive damages in a wildly different factual and legal context. The case has been seen as a "sleeper" conceptually. See, e.g. *Business Weekly*, July 9 and 16, 2007 at 31 (comments of Professor David A. Strass of the University of Minnesota.)

risk that his or her conduct might violate federal law. Therefore, in order for a party to object to the use (or omission) of the word "callous" from a jury instruction, that party would have to distinguish cases like *Smith*, *Dimarco-Zappa*, and *Iacobucci* that used the words "reckless" and "callous" seemingly interchangeably. This is a subjective standard, focused on the actor's state of mind, where the bank had one outcome at one branch, and the opposite one at the other branch. Arguably, a jury could find such a violative state of mind as that. See <u>State Farm Mutual Auto Ins. Co. v. Campbell</u>, 538 U.S. 408, 419 (2003).

For vicarious liability cases like this one, the standard is not high. <u>Romano v. U-Haul Int'l</u>, 233 F.3d 655 (1st Cir. 2000) (Title VII), describes *Kolstad v. American Dental Ass'n*, 527 U.S. 526 (1999) (Title VII), as permitting vicarious liability for punitive damages when the principal recklessly employed the unfit agent who discriminated against the plaintiff and when the agent's bad act was subsequently approved the by the principal by striking out at the plaintiff instead of resolving the dispute in the bank. According to *Romano*, there is an affirmative defense for trial where the defendant bears the burden of proof of good faith: "We hold that a written non-discrimination policy is one indication of an employer's efforts to comply with Title VII. But a written statement, without more, is insufficient to insulate an employer from liability. A defendant must also show that efforts have been made to implement its policy, through education of its employees and active enforcement of its mandate." Id. at 670; see also *Kolstad*, 527 U.S. at 544-46 (outlining the justification for the "good faith effort" safe harbor). See also 1 L. <u>Schlueter & K. Redden</u>, Punitive Damages, § 4.4(B)(2)(a), at 183-89 (4th ed. 2000); 2 J. Kircher & C. Wiseman, Punitive Damages: Law and Practice, § 24:05, at 24-19 to 24-24 (2000) (formerly edited by, and cited in Kolstad as, J. Ghiardi & J. Kircher); Restatement

(Second) of Torts § 909 (1977); Restatement (Second) of Agency § 217C (1957). See also In re Exxon Valdez, 270 F.3d 1215, 1233, 1235-36 (9th Cir. 2001), involving punitive damages for a federal maritime tort, concluding that Kolstad has overcome the First Circuit's earlier diffidence about this portion of the Restatement. See <u>CEH, Inc. v. F/V Seafarer</u>, 70 F.3d 694, 705 (1st Cir. 1995). Arguably, a jury could find that the good faith exception does not work here.

<u>State Farm Mutual Auto Ins. Co. v. Campbell</u>, 538 U.S. 408, 425 (2003), states that few awards exceeding a single-digit ratio will satisfy due process and that anything over 4 to 1 "might be close to the line of constitutional impropriety." With all the attention the Supreme Court has given to the constitutionality of punitive damages under state law, apart from <u>Kolstad v. American Dental Ass'n</u>, 527 U.S. 526 (1999), it has had little to say about the standards used in federal law cases either as a matter of constitutional law or under its supervisory powers. The general focus of recent Supreme Court cases on the topic of punitive damages, <u>State Farm Mut. Auto. Ins. Co. v. Campbell</u>, 538 U.S. 408 (2003); <u>Cooper Industries, Inc. v. Leatherman Tool Group, Inc.</u>, 532 U.S. 424 (2001); <u>BMW of North America, Inc. v. Gore</u>, 517 U.S. 559 (1996); <u>Honda Motors Co. v. Oberg</u>, 512 U.S. 415 (1994); <u>TXO Production Corp. v. Alliance Resources Corp.</u>, 509 U.S. 443 (1993); <u>Pacific Mut. Life Ins. Co. v. Haslip</u>, 499 U.S. 1 (1991); <u>Browning-Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc.</u>, 492 U.S. 257 (1989); <u>Bankers Life & Casualty Co. v. Crenshaw</u>, 486 U.S. 71 (1988), has been on the standards of *appellate* review for punitive damage awards, not the standards (if any) that should guide jurors. Appellate courts are instructed to consider "(1) the degree of the defendant's reprehensibility or culpability; (2) the relationship between the penalty and the harm to the victim caused by the defendant's actions; and (3) the sanctions imposed in other cases for comparable misconduct." Leatherman, 532 U.S. at 425 (citations omitted); accord BMW, 517 U.S. at 574-75. As the First Circuit noted in

*Zimmerman v. Direct Federal Credit Union*, 262 F.3d 70 (1st Cir. 2001) (Title VII): Indeed, BMW furnishes three general guideposts for conducting such a review: (1) What is the degree of reprehensibility of the defendant's conduct? (2) What is the ratio between the compensatory and punitive damages? (3) What is the difference between the punitive damage award and the civil penalties imposed for comparable conduct? Id. at 81 (citing BMW, 517 U.S. at 575). See *TXO Prod. Corp., Inc. v. Alliance Resources Corp.*, 509 U.S. 443, 463-64 n.29 (1993). Conduct affecting non-parties is relevant to determining reprehensibility only if it is "misconduct of the sort that harmed" the plaintiff. *State Farm Mutual Auto Ins. Co. v. Campbell*, 538 U.S. 408, 410 (2003). Despite constant requests of big business, the Supreme Court has never prohibited consideration of wealth of the defendant. See id. at 427 ("The wealth of a defendant cannot justify an otherwise unconstitutional punitive damages award."), and 417 ("'the presentation of evidence of a defendant's net worth creates the potential that juries will use their verdicts to express biases against big businesses, particularly those without strong local presences,'" quoting *Honda Motors Co. v. Oberg*, 512 U.S. 415, 432 (1994), but the practice was not barred). See also TXO Prod. Corp. v. Alliance Res. Corp., 509 U.S. 443, 489-95 (1993) (O'Connor, J., dissenting). Arguably, a jury could find, however, the bank's reprehensibility or culpability and the relationship between the penalty and the harm to the victim caused by the defendant's actions.

As a result of the foregoing, it appears at this time, which is before trial, when the theories and law will be expressed, the defendant willfully and intentionally violated the discrimination laws of the state and federal government involving a public facility, and therefore is liable for damages for punitive damages at least at this stage of the proceedings.

/s/ Robert O. Berger
Robert O. Berger
11 Beacon Street, Suite 1210
Boston, MA 02108
617-423-7575
BBO# 038900

CERTIFICATE OF SERVICE

I, Robert O. Berger, certify that the above was served on counsel for the defendant by e-mail.

July 9, 2007

/s/ Robert O. Berger
Robert O. Berger
11 Beacon Street, Suite 1210
Boston, MA 02108
617-423-7575
BBO# 038900